ROGERS v. BALDRIDGE et al.—76 S. W. (2d) 655.

Middle Section.    April 7, 1934.

Petition for Certiorari denied by Supreme Court, December 14, 1934.

True & Dorsey, of Springfield, for appellant.
J. T. Baskerville, of Gallatin, for appellees.

FAW, P. J.  The original bill in this case was filed in the chancery court of Sumner county on June 1, 1925, by Mrs. Clara Metta Rogers, a citizen of Sumner county, Tenn., against Mrs. Eliza J. Baldridge, also a citizen of Sumner county, Tenn.

The defendant Mrs. Baldridge answered the bill, and filed her answer as a cross-bill against the original complainant, and she also brought in, as a party defendant to the cross-bill, the board of Ministerial Relief of the Cumberland Presbyterian Church.

302

Answers to the cross-bill were filed by the defendants thereto, and thereafter proof was taken and filed (in the form of depositions of witnesses with documentary exhibits) on behalf of the parties, respectively.

Subsequent to the conclusion of the proof, the complainant, by leave of the court, amended her bill by striking out certain specified allegations therein, and thereafter the cause was finally heard by the chancellor upon the entire record and argument of counsel, and a decree was thereupon pronounced and entered denying the original complainant any relief, denying the cross-complainant, Mrs. Eliza J. Baldridge, the relief sought by her against the cross-defendant Board of Ministerial Relief of the Cumberland Presbyterian Church, and adjudging that complainant, Mrs. Rogers, pay all the costs of the cause, except the costs which had accrued by reason of the filing of the cross-bill of Mrs. Eliza J. Baldridge, which latter costs were adjudged against Mrs. Baldridge.

The complainant, Mrs. Rogers, excepted to said decree and prayed an appeal to this court therefrom, which was granted by the chancellor and perfected by the appellant.

The defendant and cross-complainant Mrs. Baldridge did not appeal, and no brief or argument in her behalf has been submitted to this court. The contest here is between the original complainant, Mrs. Rogers, on the one hand and the Board of Ministerial Relief of the Cumberland Presbyterian Church on the other hand, which presents a somewhat anomalous situation, for the reason that the board was not made a defendant to complainant's bill and there was no direct issue made by pleadings below between Mrs. Rogers and the board.

It appears that the original bill was filed on June 1, 1925; that the final decree of the chancellor was made and entered on May 12, 1931; that the complainant's oath in lieu of bond for the appeal was filed on June 3, 1931; that the transcript of the record was filed in this court on July 17, 1933; that the record was submitted to this court, without oral argument, on October 17, 1933, but at that time the record was, by leave of the court, withheld for the purpose of filing a reply brief by the solicitor for the board; and that the reply brief was filed on December 21, 1933. The record reached the hands of the court about the 1st of February, 1934.

The failure to file the transcript of the record in this court for more than two years after the appeal was perfected is unexplained on the record; but no complaint thereof is made by either of the parties.

Omitting for the present some controverted matters which will be mentioned later in the discussion of the assignments of error, the facts out of which this litigation arose are as follows:

The complainant was born on January 9, 1895. Her father, ———

Luton, died in 1896 or 1897. She and a sister and two brothers lived with their mother for some years after the death of their father, but in 1904 her mother, having remarried, abandoned her children, and they were taken by their uncle, W. O. Luton, to his home, and thereupon he set about finding homes for them. W. O. Luton was a farmer living in Robertson county, Tenn.

Early in the year of 1905 (when complainant was ten years of age) she went to live in the home of J. L. Baldridge in Sumner county, Tenn., where she continued to reside as a member of the family of said J. L. Baldridge until February 10, 1913, when she was married to L. J. Rogers, her present husband.

J. L. Baldridge took complainant to his home pursuant to an agreement made by him with complainant's said uncle, W. O. Luton, that he (Baldridge) would adopt complainant (who was then called Metta Luton) as his child.

After complainant had been living in the home of J. L. Baldridge for "a month or two," a decree was entered of record by and in the county court of Robertson county, at the instance and procurement of said J. L. Baldridge, which purported to permit him (Baldridge) to adopt said Metta Luton as his child, and that she have all the rights in respect to the property of said J. L. Baldridge as if she was his own child and born to him in lawful wedlock. A copy of the record of the county court of Robertson county pertaining to said adoption proceeding is in evidence, and is as follows:

"In the County Court Clerk's Office for Robertson County, Tenn. Minute Book 31, Pages 330-331. (Monday, May 22, 1905) J. L. Baldridge, Ex Parte in the Matter of Adoption of Metta Luton.

"Be it remembered that this cause was this day heard before the Worshipful County Court upon the petition of J. L. Baldridge, which is as follows:

"J. L. Baldridge, a citizen of Sumner County, Tennessee, respectfully states to the Court that he is Forty-four (44) years of age; that he is married; has a wife who is about 32 years of age; that he has been married nine years; that he has no children; that Metta Luton is about 10 years of age; that her father died several years ago leaving a widow and four children; that he had but little property; that his widow took care of her children a while and has abandoned them; that W. O. Luton the uncle of Metta Luton took care of said children and tried to get them homes, at his request, the petitioner allowed Metta Luton to come to his home and stay where she now is. The petitioner and his wife are both very much attached to the child and the child is attached to them; they desire to adopt the child and give it a home and they will treat it just as if it was their child, and born to them in lawful wedlock. Therefore the petitioner prays that the court grant an order permitting him to adopt the said Metta Luton and that her name be changed to Metta Bald-

ridge, and giving her the same rights in respect to the petitioner's property as if she was his own child and grant your petitioner all other and general relief.

"Came J. L. Baldridge, and made oath in due form of law, that the statements made in the foregoing petition are true to the best of his knowledge and belief. This April 29th, 1905.

"Test. G. A. Henry, Jr. D. C. J. L. Baldridge.

"In the matter of the adoption of Metta Luton came W. O. Luton, who being duly sworn states that he is the uncle of Metta Luton, that he knows J. L. Baldridge, and has known him for the last 30 years; he is a farmer, owns a farm, and stock, is a good liver and good citizen; that he will take care of, educate and treat Metta Luton as she should be, and that he will provide for her a good home and he asks the Court to permit the said Baldridge to adopt Metta Luton.

"W. O. Luton.

"Sworn to and subscribed before me, this April 29, 1905.

"G. A. Henry, D. C.

"And it appearing to the Court from the proof that J. L. Baldridge is very much attached to Metta Luton and that the said Metta Luton has no home except the one given her by the said Baldridge, that the said Baldridge is a man of good character, he is a farmer and owns a farm, and that he agrees to take the said Metta Luton and adopt her and treat her as his child and it appearing to the court that it is manifestly for the interest of the said Metta Luton that she be adopted by the said Baldridge. It is therefore ordered and decreed by the court that the said J. L. Baldridge be permitted to adopt the said Metta Luton and that she have all the rights, in respect to the property of the said J. L. Baldridge, as if she was his own child and born to him in lawful wedlock, and that her name be changed to Metta Baldridge, but the said J. L. Baldridge is not to have any rights in the property of the said Metta Baldridge, nor can he inherit from her. He will pay the costs of this cause for which fi. fa. will issue."

Complainant was a little more than seventeen years of age when she married L. J. Rogers (then eighteen years of age) on February 10, 1913, and left the home of J. L. Baldridge. Her marriage was contrary to the wishes, and without the consent, of J. L. Baldridge and his wife, Eliza J. Baldridge, the defendant and cross-complainant below. J. L. Baldridge and wife had no other children when they adopted complainant, or thereafter.

On April 30, 1913, J. L. Baldridge executed a will, with all due formalities, as follows:

"I, James L. Baldridge being of sound mind and disposing memory do make and publish this as my last will and testament hereby revoking all other wills heretofore made by me, 1st: I direct that

my just debts and burial expenses be paid as soon after my death, as practical.

"2nd: I will and bequeath to my beloved wife, Eliza J. Baldridge for and during her natural life all of my real and personal property with authority on her part to use any or all of it for her necessary support and maintenance.

"3rd: At the death of my wife whatever of my property remains I give and bequeath to the Board of Ministerial Relief of the Cumberland Presbyterian Church to be used in the support of old and needy ministers of that Denomination of which I am a member.

"4th: I give to C. M. Rogers the sum of One dollar.

"5th: I appoint my wife Eliza J. Baldridge, Executrix to this will and direct that she not be required to execute bond and surety or render Inventory or make a settlement as such.

"J. L. Baldridge."

J. L. Baldridge died on November 12, 1924, and, in due season thereafter his aforesaid will was duly probated in the county court of Sumner county, Tenn., and his widow, Eliza J. Baldridge, qualified as the executrix thereof.

Thereafter, on June 1, 1925, complainant filed the original bill in this cause against Mrs. Eliza J. Baldridge, in which bill the facts we have stated are all, in substance, set forth.

Complainant also alleged in her bill that J. L. Baldridge and his wife, the defendant Eliza J. Baldridge, requested complainant's said uncle, W. O. Luton, and arranged with him, to take complainant as the child of said J. L. Baldridge and his said wife "upon the distinct understanding and agreement that he would legally adopt your complainant as his own child, and at his death she should receive his property."

Then, after setting out the aforesaid adoption proceedings in the county court of Robertson county, complainant further alleges that, under and by virtue of the terms of said agreement, and pursuant to said adoption of complainant by J. L. Baldridge, complainant was taken into his home and given his name as aforesaid, and he clothed and sheltered her and permitted her to go to school some from the time she was ten or eleven years of age until she arrived at the age of seventeen years, when she married L. J. Rogers, with whom she is now living as his wife, and by said intermarriage they have had born to them two children, a boy and a girl; that complainant was taught for years to consider that said J. L. Baldridge and his wife were her real parents; that they (Baldridge and wife) were deeply attached to complainant and exhibited their love in many ways; that this affection was reciprocated by complainant, who continued to render to her said foster parents all the services that duty required or affection suggested; that, when complainant grew into womanhood and was sought in marriage by her husband, he solicited her hand from the said J. L. Baldridge, but

he (Baldridge) did not desire that she should marry him (Rogers), although he was a high-toned gentleman of good character and reputation, industrious, stood well in the community, and was worthy of complainant's hand.

Complainant then alleged that for some reason unknown to her, unless it was the fact that she married her said present husband, the said J. L. Baldridge made a will on April 30, 1913, shortly after complainant's marriage, which will of J. L. Baldridge, as hereinbefore quoted, is copied into complainant's bill, after which it is alleged that said J. L. Baldridge died in Sumner county, Tenn., on November 12, 1924, and his said will was duly and legally probated in the county court of said county.

It is further alleged in the bill that during the last illness of said J. L. Baldridge complainant and her husband attended him and waited on him with the affection of his children; that they visited him during his life-time after their marriage; that he was old and feeble for some time before his death, and was between sixty-five and sixty-six years of age when he died. Complainant further alleged that from the time she was taken into the home of said Baldridge and wife she was as affectionate toward them as any child could have been toward its real parents; that she was industrious and attentive to their wants, waited on them, and rendered every reasonable service that children could render toward their parents; that she worked out in the field and "made a hand," and performed these services, which were valuable, for more than six years, or from the time Baldridge took her into his home to live as his child until her marriage as aforesaid.

Complainant further alleges that said J. L. Baldridge, at the time of his death, owned a valuable estate, consisting of real, personal, and mixed property; that the value of his personal estate, consisting of stocks in banks, money, notes, live stock, and other personal property, amounted to several thousand dollars, and his real estate situated in the Fourteenth civil district of Sumner county, Tenn., was worth $8,000 or $10,000; that defendant Mrs. Baldridge did not execute any bond as executrix; that she is uneducated and inexperienced in business; that she cannot write, "save merely to write her name;" that she is disposing of said estate in any manner she sees proper and is dissipating said estate, and same will be dissipated and wasted by her on account of her inexperience and her incapacity to protect and conserve the same, unless she is enjoined from disposing of the same, collecting or converting the same in any manner, by proper process from the chancery court.

Complainant further alleged that she is informed and believes, and she so states and charges, that under the second clause of said will of J. L. Baldridge the defendant Mrs. Baldridge is only vested with a life estate in the real and personal property belonging to

said estate, and that she has no right to use any portion of it except that which may be absolutely necessary for her support and maintenance; that the third clause of said will is absolutely nugatory and void, for the reason that there is no such devisee in existence or who is legally capable of taking the properties attempted to be devised thereunder as the Board of Ministerial Relief of the Cumberland Presbyterian Church to be used in the support of old and needy ministers, and for the further reason that, if there were such a board in existence, said bequest is too indefinite and uncertain to be enforced, as it is not shown where said Board of Ministerial Relief of the Cumberland Presbyterian Church, if any such board was or is in existence, is located, or that said board, if in existence, was intended by the testator in said clause of his said will.

It is further alleged in complainant's bill (as subsequently amended) that, for the reasons stated, she, as the adopted child of said J. L. Baldridge and under said agreement made by her said uncle, W. O. Luton, with said J. L. Baldridge as aforesaid, is entitled under the law of Tennessee to all of the estate, both personal and real, of the said testator; that, if the court should be of the opinion that complainant is not entitled to said entire estate, both real and personal, of said testator as aforesaid, she is entitled to recover from the estate of the said J. L. Baldridge and from the defendant Mrs. Eliza J. Baldridge as executrix of the will of said J. L. Baldridge, deceased, reasonable compensation for the personal services she rendered to the said Baldridge and wife from the time she was taken into their home as their child up to the time of her intermarriage with her present husband, a period of more than six years, which reasonable sum complainant believes, and states and charges, is not less than $2,000.

After a prayer for process against Mrs. Eliza J. Baldridge, and waiver of her answer under oath, complainant prayed (1) that the court hold, adjudge, and decree that she, under said agreement made by her uncle with said J. L. Baldridge and her adoption by him as his child, is entitled to the entire estate of said J. L. Baldridge, to the exclusion of "even the defendant Mrs. Eliza J. Baldridge;" (2) that, if the court should be of the opinion that she is not entitled to said entire estate as aforesaid, then that the court construe said last will and testament of said J. L. Baldridge, and adjudge and decree that complainant is entitled to said entire estate, subject only to the estate for life of the defendant Mrs. Eliza J. Baldridge therein under the first clause of said last will of J. L. Baldridge; (3) that, if the court should be of the opinion that the aforesaid relief cannot be granted, complainant have a judgment against defendant Mrs. Eliza J. Baldridge, as executrix of said J. L. Baldridge, deceased, for her reasonable compensation,

for personal services rendered by her during said six years that she labored for said J. L. Baldridge as aforesaid.

Complainant prayed further for an injunction against defendant Mrs. Eliza J. Baldridge, both individually and as executrix of J. L. Baldridge, deceased, enjoining her from in any manner collecting, disposing of, or dissipating any of the estate, either real, personal, or mixed, of the said J. L. Baldridge, deceased, in order that same may be conserved and protected and subjected to such decree as the court may pronounce in this cause.

Complainant also prayed for general relief, and alleged that this is the first application for the writ of injunction in this cause.

An injunction as prayed for was issued and served pursuant to a fiat granted by the county judge of Robertson county.

Defendant Mrs. Eliza J. Baldridge answered complainant's bill, and admitted the allegations of the bill with respect to the execution, publication, and probate of the will of her deceased husband, J. L. Baldridge, and that she was duly qualified as executrix of said will and is now engaged in winding up said estate.

Defendant Mrs. Baldridge states in her answer that she knows nothing of her own knowledge of the proceedings in the county court of Robertson county, Tenn., under which complainant claims that she became the legally adopted daughter of J. L. Baldridge, except from the allegations and charges contained in complainant's bill in this cause; but defendant "charges" that said proceedings are irregular and void, and that complainant was not legally adopted by the said J. L. Baldridge, now deceased. She says, however, that if complainant, under said proceedings, became the legally adopted daughter of said J. L. Baldridge, this did not preclude or prohibit said J. L. Baldridge from making the will in question or from disposing of his property to the exclusion of complainant; that, if complainant was legally adopted by said J. L. Baldridge, she acquired no greater right or interest in his property or estate than a natural born child would have done.

Defendant Mrs. Baldridge further alleges in her answer that, under and by the terms of said will, and especially paragraph 2 thereof, she is vested with the absolute title to all of the property owned by her husband, the said J. L. Baldridge, at his death and disposed of by the said Baldridge in his last will, and that she has the right to use and dispose of all of said property without any restrictions, and that her title to the same is absolute.

Defendant Mrs. Baldridge further asserts in her answer that the third clause of said will is void and of no force and effect, "because there is no such person or corporation in law as the Board of Ministerial Relief of the Cumberland Presbyterian Church as set out and designated in paragraph three of said will," and she further charges that said bequest is void and of no effect, "because

it is too indefinite and uncertain and does not designate said Board by location, place of business, or the officers in charge of the same or to whom said money should be paid, or that said Board was in existence at the time said will was executed, or had an office, place of business or an official power and authority to receive and use or distribute said bequest.''

Defendant Mrs. Baldridge denies, in her answer, that complainant is entitled to recover from her (Mrs. Baldridge), as the executrix of the will of her deceased husband, for personal services rendered him, ''because services rendered complainant by the said J. L. Baldridge and your respondent were of far more value to complainant than the services rendered to the said J. L. Baldridge by complainant, complainant being at the time only ———— years of age, without a home or any one to care for her and look after her, and they took her into their home, fed and clothed her and cared for her until she married;'' that ''furthermore, if complainant was and is the adopted daughter of the said J. L. Baldridge, deceased, she was a member of decedent's family by adoption and cannot recover for services rendered the said J. L. Baldridge, unless there was a contract between complainant and the said J. L. Baldridge to that effect.''

Defendant Mrs. Baldridge also pleaded and relied upon the statute of limitations of six years in bar of complainant's suit. She further denied that there was any contract for payment for personal services entered into between complainant and said J. L. Baldridge.

Upon the allegations of her answer, Mrs. Baldridge prayed that same be treated as a cross-bill against the original complainant, Mrs. Clara Metta Rogers, and the Board of Ministerial Relief of the Cumberland Presbyterian Church, and that process issue for said cross-defendants, etc.; that the court construe the aforesaid will of J. L. Baldridge, deceased, and especially paragraphs numbered 2 and 3 thereof, and declare by decree the right, title, and interest of cross-complainant in the property of her deceased husband, and that the court hold that paragraph 2 of said will gives to cross-complainant, Mrs. Baldridge, the absolute title to all of the property owned by the said J. L. Baldridge at the time of his death and disposed of by his said will; that the court adjudge and decree that the Board of Ministerial Relief of the Cumberland Presbyterian Church, if such an organization exists, takes no interest whatever in the property disposed of by said J. L. Baldridge in his said will, and adjudge and decree that said clause is too vague, indefinite, and uncertain to base title upon; and that said clause is void; and she prays for general relief.

The cross-defendant Mrs. Clara Metta Rogers answered the cross-bill. It is sufficient for present purposes to say that she denied,

310

separately and specifically, each and all of the allegations of the answer and cross-bill of cross-complainant, Mrs. Baldridge, which contravened the allegations of complainant's original bill.

The Board of Ministerial Relief of the Cumberland Presbyterian Church filed an answer to the cross-bill, in which it admitted the execution of the aforesaid will of J. L. Baldridge, his death, the probate of said will, and the qualification of his widow, Eliza J. Baldridge, as the executrix of said will.

Cross-defendant board denied that the third clause of said will of said J. L. Baldridge is absolutely nugatory and void, for the reason that there was no such devisee as the Board of Ministerial Relief of the Cumberland Presbyterian Church in existence or legally capable of taking the property attempted to be devised thereunder. It denied that the bequest to it is too indefinite and uncertain to be enforced, and denied that it was necessary for the testator.to designate the location of said board in order to make a valid gift to it.

Cross-defendant board then alleged that the Board of Ministerial Relief of the Cumberland Presbyterian Church is a duly incorporated body, incorporated under the laws of the states of Kentucky and Indiana under the name and style of Board of Ministerial Relief of the Cumberland Presbyterian Church; that it has its principal office and place of business at Bowling Green, Ky.; that it was in existence at the time of the making of the will and at the time of the taking effect of said will, to-wit, the death of the testator, and is now in existence, actively functioning as the Board of Ministerial Relief of the Cumberland Presbyterian Church; that one of its principal functions is to look after the support and maintenance of the old and needy ministers of the Cumberland Presbyterian Church; and that it is the only board of said church charged with this duty.

Cross-defendant board also denied that under paragraph 2 of the will of J. L. Baldridge the cross-complainant, Mrs. Eliza J. Baldridge, is vested with an absolute title or estate in the property owned by her husband, J. L. Baldridge, but alleged that she only took a life estate under said will. Cross-defendant board denied that Eliza J. Baldridge has the right to use any more of said property than is necessary for her support and maintenance, and it alleges that the rents from the real estate are sufficient to do this. In its answer, cross-defendant board traverses all of the material allegations upon which the cross-complainant seeks relief, and also traverses the material allegations upon which complainant, Mrs. Rogers, predicates her bill.

The chancellor's findings of fact and law are embodied in his decree, which decree is as follows:

"This cause came on to be heard before the Hon. J. W. Stout, Chancellor, etc., on the 12th day of May, 1931, upon the original bill and answer, the cross-bill of Mrs. Eliza J. Baldridge and the answer of the defendants, Mrs. Clara Metta Rogers and the Board of Ministerial Relief of the Cumberland Presbyterian Church, and the proof in the cause, and in fact upon the entire record and the argument of counsel, from all of which the court finds, holds and decrees:

"I. That all the equities in the original bill are fully met by the answers; that the complainant in the original bill failed to show by the proof that there was any contract, in writing or otherwise, by which she was to be devised or given the property of J. L. Baldridge, or that she rendered any service to J. L. Baldridge under any contract, or that she rendered any service for which she would be entitled to any compensation.

"II. The original bill and the cross-bill both pray for a construction of said will. The Court finds and holds from the proof that the Board of Ministerial Relief of the Cumberland Presbyterian Church was duly incorporated and constituted and was in existence and functioning at the time of the making of said will and at the time of the death of J. L. Baldridge, the testator, and that said Board is fully authorized and capable under the will to accept or take said bequest under the will.

"The Court holds and decrees that under the terms of said will the defendant and cross-complainant, Mrs. Eliza J. Baldridge, the widow of J. L. Baldridge, was given a life estate in all the property of which he died seized and possessed, to have and to hold the same for and during her natural life, with the right to use such of it as was necessary for her support and maintenance, and that upon her death said property goes to and becomes the property of the Board of Ministerial Relief of the Cumberland Presbyterian Church, to be used in the support of and for old and needy ministers of that denomination, and that the defendant and cross-complainant, Mrs. Eliza J. Baldridge, will only have the use of said property and in such way as may be necessary for her support and maintenance, and upon her death same will vest in the said Board of Ministerial Relief of the Cumberland Presbyterian Church.

"III. The complainant, Mrs. Clara Metta Rogers, will pay all the costs of this cause except such as accrued by reason of the filing of the cross-bill by Mrs. Eliza J. Baldridge and she and the surety on her cost bond will pay such part of said costs as accrued by the filing of the cross-bill and incident thereto, for all of which execution will issue.

"To the foregoing action of the court complainant excepts and prays an appeal to the next term of the Court of Appeals sitting at Nashville for Middle Tennessee, which appeal is granted upon

complainant executing appeal bond or otherwise complying with the law in such cases, by taking the oath prescribed by law for poor persons in lieu of an appeal bond, and complainant is given thirty days in which to do so and otherwise perfect her appeal, she having made application for said time and satisfactory reasons appearing therefor to the Court.''

The assignments of error filed on behalf of complainant specifically challenge as erroneous each and all of the chancellor's findings of fact and of law and his decree adverse to her.

1. It will be remembered that defendant Eliza J. Baldridge states, in her answer to complainant's bill, that she knows nothing of her own knowledge of the proceedings under which complainant claims that she became the legally adopted daughter of J. L. Baldridge, but she ''charges'' that said adoption proceedings were ''irregular and void and that complainant was not legally adopted by the said J. L. Baldridge,'' and that the Board of Ministerial Relief of the Cumberland Presbyterian Church, in its answer to the cross-bill of Mrs. Eliza J. Baldridge, states that ''it is not advised as to whether the complainant was ever legally adopted by J. L. Baldridge and it calls for strict proof as to this in so far as it is material to its rights in the premises.''

It will also be observed that the learned chancellor made no specific finding upon the issue thus presented with respect to the validity of the adoption proceedings. However, it seems to be tacitly assumed in the briefs of both parties that the chancellor proceeded on the assumption that complainant was legally adopted by J. L. Baldridge, and the board goes further in the reply brief of its solicitor, wherein it is said: ''The complainant alleges that she was duly and legally adopted by J. L. Baldridge and we concede that this is true.''

Because of the concession thus made of record, and for an additional reason which will be presently mentioned, the rights of the parties to this cause must be ascertained and determined upon the theory that complainant was the legally adopted child of J. L. Baldridge from and after the date of said adoption proceeding; but, in order to avoid any misunderstanding of our ruling on this point in controversies which may hereafter arise between other parties with respect to the validity or invalidity of adoption proceedings, we deem it proper to say that there is, to say the least, grave doubt of the jurisdiction of the county court of Robertson county to render the aforesaid decree which purported to authorize the adoption of complainant by J. L. Baldridge.

The right of adoption is not a natural one, and was unknown to the common law. In re Knott, 138 Tenn., 349, 197 S. W., 1097. At the time of the adoption proceedings here in question, the county courts of this state derived their powers and jurisdiction in matters of adoption of children from section 3636 of the Code of 1858

(Shannon's Code, sec. 5402), which provided that "the circuit and county courts of this state have concurrent jurisdiction to change names, to legitimate, and authorize the adoption of children, *on the application of a resident citizen of the county in which the application is made.*" (The italics are ours.)

The record shows, without dispute, that J. L. Baldridge was a resident citizen of Sumner county at the time he procured the decree of the county court of Robertson county purporting to adopt complainant, and, moreover, *that fact appears on the face of the record of the adoption proceedings in Robertson county.*

The county courts of this state are courts of general jurisdiction over matters pertaining to the adoption of children, and such decrees cannot be collaterally questioned, unless the record of the adoption proceedings shows affirmatively the absence of jurisdiction. Crocker v. Balch, 104 Tenn., 6, 55 S. W., 307; Magevney v. Karsch (Tenn. Sup.), 65 S. W. (2d), 562, 567, 92 A. L. R., 343.

In the case last cited, this question was thoroughly considered, and in that opinion the rule was expressly recognized that, if the absence of jurisdiction of the court appears on the face of the record of the adoption proceedings, the decree or judgment is subject to collateral attack. This is merely an application to adoption proceedings of the general rule governing judgments and decrees of courts of general jurisdiction. Brown on Jurisdiction (2 Ed.), section 20a, page 103.

In the instant case, the record of the adoption proceedings not only fails to show one of the essential jurisdictional facts, but shows affirmatively a fact which deprived the court of jurisdiction, viz., that the applicant was not a resident citizen of the county in which the application was made.

But, when the adoptive parent obtains the decree he asks for and takes the child into his family and treats it as his own, he and those claiming under and through him are estopped to assert that the child was not legally adopted. In re Reichel, 148 Minn., 433, 182 N. W., 517, 16 A. L. R., 1016, and annotation, page 1030; annotation, 27 A. L. R., 1365-1369; Adcock v. Simon, 2 Tenn. App., 617, 623.

The rule just stated is applicable here, and for the purposes of this case the status of the complainant is the same as that of a legally adopted child of J. L. Baldridge.

2. As the adopted child of J. L. Baldridge, what was, and is, the legal status of complainant with respect to the estate of J. L. Baldridge?

The adopted child is given the legal status of a legitimate natural child. Meriwether v. Bank & Trust Co., 153 Tenn., 696-699, 285 S. W., 34.

"No cases have been found in which the statute confers upon the adopted child greater rights than a child born in lawful wedlock would have." Annotation, L. R. A. 1916D, 424.

In the absence of a binding agreement on the part of the adoptive parent to leave property to the adopted child, the only effect of such adoption, with respect to the property of such parent, is to place the adopted child in the same position as that occupied by the parent's legitimate, natural children, with no vested right in his estate, and leaving the parent free to dispose of it by will. Masterson v. Harris, 107 Tex., 73, 174 S. W., 570, 576; Clark v. West, 96 Tex., 437, 73 S. W., 797; Pemberton v. Perrin, 94 Neb., 718, 144 N. W., 164, Ann. Cas., 1915B, 68, 69; Odenbreit v. Utheim, 131 Minn., 56, 154 N. W., 741, L. R. A., 1916D, 421; annotation; "Right of adopting parent to disinherit adopted child," L. R. A., 1916D, 424-426.

■ "It is manifest that much more is included in statutory adoption than the mere right of inheritance. The adoptive parents may exercise precisely the same control over the child as though it were their own by birth, and *are entitled to its services,* and, on the other hand, the child is entitled to the care and maintenance of such parents." (Italics ours.) Chehak v. Battles, 133 Iowa, 107, 110 N. W., 330, 334, 8 L. R. A. (N. S.), 1130, 1136, 12 Ann. Cas., 140.

. "It is a well established rule that a child cannot recover for services rendered during minority to a person standing in loco parentis to him, in the absence of evidence of a contract to pay for such services." 28 R. C. L., page 680, paragraph 15.

■ It follows from what we have said that, unless J. L. Baldridge made a binding agreement to leave his property to complainant, he was free to devise and bequeath his estate to others, for it is too well settled in Tennessee to need citation of authority that a parent may disinherit his legitimate, natural child.

■ ■ 3. The chancellor found that "the complainant in the original bill failed to show by the proof that there was any contract, in writing or otherwise, by which she was to be devised or given the property of J. L. Baldridge, or that she·rendered any services to J. L. Baldridge under any contract, or that she rendered any service for which she would be entitled to any compensation."

The findings of the chancellor just quoted are assigned as error, and for support of this asignment of error appellant says that: "The deposition of W. O. Luton fully established a written contract entered into by and between him, standing in loco parentis, and the said J. L. Baldridge on the day before the said J. L. Baldridge had the complainant adopted by legal proceedings in the County Court at Springfield, Tennessee, under the terms of which it was agreed that if he, the said W. O. Luton, would permit the said J. L. Baldridge to adopt complainant, that he, the said J. L. Bald-

ridge would treat her as his child, give her a good home, and that she should have all of his property."

Complainant relies solely upon the testimony of W. O. Luton to prove that J. L. Baldridge entered into a "written contract" that she (complainant) "should have all of his property." There is no other evidence in the record on that subject.

If there was a written contract by the terms of which J. L. Baldridge agreed that complainant should have his property at death, then complainant would be entitled to have such contract specifically performed. Starnes v. Hatcher, 121 Tenn., 330, 117 S. W., 219. The testimony of W. O. Luton relating to the alleged agreement of J. L. Baldridge is as follows:

"Q. Previous to the adoption of the complainant by J. L. Baldridge state what written agreement he had with you with reference to being permitted to take possession of this child, I mean the complainant, and who, if anyone, witnessed this written agreement? A. Mr. Baldridge agreed to take this child and care for her as his own and in the end his property would fall to Metta. J. B. Empson witnessed this agreement. (Excepted to: Because the agreement is the best evidence.)

"Q. Did you have this written agreement in your possession at the time J. L. Baldridge had this complainant adopted by decree of the County Court for Robertson County, Tenn.? A. Yes sir.

"Q. Do you know where this written agreement is now? A. I do not. It has either been lost or misplaced.

"Q. Have you made diligent search for the same for the purpose of exhibiting it as part of your deposition, if so, were you able to find it or not? A. I have made diligent search and am unable to find it anywhere."

On cross-examination W. O. Luton was asked and answered further questions on this subject as follows:

"Q. You talked with Messrs. True & Dorsey, attorneys for complainant, or they talked with you before the bill was drafted? A. Yes sir.

"Q. Did you tell them about this alleged written agreement? A. Yes sir.

"Q. Who took charge of this alleged written agreement? A. I carried it with me the day Mr. Baldridge and I went to adopt the child.

"Q. What became of it? A. It was either lost or misplaced, I don't have any other recollection of it since that date.

"Q. You, then have not seen it since that date? A. No, not that I know of. I looked in a drawer where I kept all of my important papers. I have never been able to find it since.

"Q. Well, you don't recall seeing it since you had it at Springfield? A. Not since the day she was adopted.

"Q. And that was at Springfield? A. Yes, sir.

"Q. You have no recollection of bringing it home from Springfield? A. No sir.

"Q. You were the closest kin of Metta Luton? A. Yes, sir, an Uncle.

"Q. She was living at your home? A. When Mr. Baldridge adopted her.

"Q. She was then about ten years old? A. About ten.

"Q. Large or small? A. She was reasonably well grown..

"Q. Of course as her nearest kin, her father being dead, and her mother having deserted her as I gather from your testimony, it was necessary for you in writing to express your willingness for Baldridge to adopt her? A. Yes.

"Q. And that was done? A. Yes, sir.

"Q. Now, that's the paper that you haven't seen since that day? A. Yes sir. . . .

"Q. Is J. R. Empson living? A. No sir.

"Q. This paper writing that you say has been mislaid was it filed with the Clerk or do you know? A. If it was I don't know.

"Q. You couldn't say whether it was or not? A. No sir, I couldn't.

"Q. Can you name anyone else besides J. R. Empson who saw the paper? A. He was the only one present, he and Mr. Baldridge, and I.

"Q. Empson was a Justice of the Peace wasn't he? A. No sir. Just a very special friend of mine.

"Q. In Robertson or Sumner County? A. Lived in Robertson.

"Q. How long has he been dead? A. Since 1915.

"Q. Did you sign the paper in his presence? A. Yes, sir, Mr. Baldridge signed it and Mr. Empson witnessed it.

"Q. I asked you if you signed it in his presence? A. Yes, sir.

"Q. Did you and Mr. Baldridge go to Springfield that day? A. No, sir.

"Q. How long before you went? A. The next morning.

"Q. And that was in what year did you say? A. That was—I don't want to get confused—the child was ten years old—see what year that would be, Judge—That was in—about 1905 I guess.

"Q. Well it was the same day that the alleged adoption proceeding was had in Springfield? A. Yes, sir.

"Q. What attorney handled the alleged adoption proposition? A. I think it was Mr. Garner. Mr. Ewing Garner.

"Q. He's dead also? A. Yes, sir."

We have quoted all of the testimony of W. O. Luton relating to the alleged agreement of J. L. Baldridge that complainant should have his property, and this is all the evidence on that subject in the record. Does the testimony of W. O. Luton meet the require-

ments of the law with respect to the quantum of proof necessary to establish such contract?

It has been held that in such case the evidence must be "so strong, cogent, and convincing as to remove and exclude every doubt that decedent made the contract." Steele v. Steele, 161 Mo., 566, 61 S. W., 815, 817; Grantham v. Gossett, 182 Mo., 651, 81 S. W., 895, 900.

We are not prepared to adopt the extreme rule thus announced by the Missouri· court; but we think that "the agreement should be clearly and definitely established." Anderson v. Anderson, 75 Kan., 117, 88 P. 743, 9 L. R. A. (N. S.), 229, 234.

There is every reason to require a degree of proof equal to that essential to the establishment of a resulting trust, which "must be strong and unequivocal and of such character as to disclose the exact rights and relations of the parties."

In order to set up a resulting trust, "the proof should be sufficient in amount, and of such character as to lead to definite conclusions. When the evidence is so ambiguous and indefinite or when it relates to transactions so remote as to fall short of such a test, it is inadequate to establish the trust." Jones on Evidence (2d Ed.), vol. 3, sec. 1447, pp. 2624, 2625.

Moreover, it should be borne in mind that in the instant case the complainant is endeavoring to prove, by parol evidence, the contents of an alleged lost written instrument. The Supreme Court of the United States has said that in such case the proof should be "at all events, such as to leave no reasonable doubt as to the substantial parts of the paper." Renner v. Bank of Columbia, 9 Wheat., 581, 6 L. Ed., 166, 170.

In 2 Jones on Evidence (2 Ed.), sec. 856, p. 1556, the author, speaking with reference to the case of Renner v. Bank of Columbia, supra, says that there is no reason for insisting upon a rule of such "extreme strictness" (that is, to require proof beyond a reasonable doubt), but that "there are cogent reasons for requiring that lost documents should be proved clearly and in a satisfactory manner when secondary evidence is resorted to," and numerous cases are cited in the footnotes as supporting the latter rule.

A consideration of the testimony of W. O. Luton, with the foregoing rules requiring clear, cogent, unequivocal, and definite proof of the contract in mind, has satisfied us that the evidence is not sufficient to prove that J. L. Baldridge agreed and contracted that complainant should have his property at his death.

It is seen that W. O: Luton was testifying to his recollection of the contents of a document executed about twenty-three years prior to the time he testified, and which document he said that he had not seen since the day on which complainant was adopted

318

at Springfield, viz., May 22, 1905. He says that, according to his recollection, the last time he saw the agreement was at Springfield when complainant was adopted, and that he could not say whether it was filed with the clerk on that occasion or not. He does not undertake to quote the words of the alleged "written agreement," and under the circumstances it would be difficult to believe that he could do so. His statement that "Mr. Baldridge agreed to take this child and care for her as his own and in the end his property would fall to Metta" was manifestly his impression of the purport and effect of the agreement.

The record of the county court, hereinbefore copied, shows that on a day prior to the entry of the adoption decree of the county court at Springfield J. L. Baldridge signed his petition for the adoption of complainant, and immediately following said petition W. O. Luton signed a paper writing in the nature of a consent to the adoption of complainant by J. L. Baldridge. In said petition (below which W. O. Luton stated his consent), J. L. Baldridge prayed the court for permission to adopt the said Metta Luton and to give her the same rights in respect to his property as if she were his own child.

It is easy to see how the agreement of Baldridge that complainant should have the same rights in his property as if she were his own child might be remembered by Luton (especially after the lapse of many years) as an agreement that "in the end his property would fall to Metta," which it would have done but for the will of J. L. Baldridge.

We are of the opinion that the chancellor did not err in finding and adjudging that the proof was not sufficient to show' that there was a contract by which complainant was to have all of the property of J. L. Baldridge, or that complainant rendered any services to J. L. Baldridge pursuant to such contract.

In the absence of proof of the contract alleged in the bill, there is no basis in the record for a decree in complainant's favor either on the theory of specific performance or quantum meruit.

4. By the terms of his will, hereinbefore copied, J. L. Baldridge did not give to his wife, Eliza J. Baldridge, an unlimited and unqualified power to dispose of his property, real and personal, and she took an estate therein for the term of her natural life only, with the right to use so much of it as was necessary for her support and maintenance. The chancellor so held, and in this there was no error. McKnight v. McKnight, 120 Tenn., 431, 115 S. W., 134; Emert v. Blair, 121 Tenn., 240, 247, 261, 118 S. W., 685.

5. The chancellor found and adjudged that "the Board of Ministerial Relief of the Cumberland Presbyterian Church was duly incorporated and constituted and was in existence and functioning at the time of the making of said will and at the time of the death

of J. L. Baldridge, the testator, and that said Board is fully authorized and capable under the law to accept or take said bequest under the will;" that upon the death of Mrs. Eliza J. Baldridge the estate devised and bequeathed by J. L. Baldridge "goes to and becomes the property of the Board of Ministerial Relief of the Cumberland Presbyterian Church, to be used in the support of and for old and needy ministers of that Denomination."

That part of the decree last quoted is challenged by appellants as error. The record shows that the Board of Ministerial Relief of the Cumberland Presbyterian Church is a corporation; that it was incorporated under the laws of the state of Indiana in the year 1891; that it was reincorporated under the laws of the state of Kentucky in the year 1914; that it has functioned continuously since its original incorporation in Indiana (in fact since the year of 1881); that its principal office is, and has been since 1914, maintained at Bowling Green, Ky. The purposes of said incorporation, as stated in its charter, are "to receive, manage, hold and dispose of contributions of money or other property, whether personal or real estate, according to the direction or the request or wish of its donors, or if no directions are given or requests made, then according to the instructions of the General Assembly of the Cumberland Presbyterian Church, for the care of the aged, infirm and disabled ministers and the widows of ministers and the orphans of deceased members of the Cumberland Presbyterian Church."

It is thus seen that the devise to the Board of Ministerial Relief of the Cumberland Presbyterian Church, in the will of J. L. Baldridge, was made to a corporation in existence at the time the estate was to vest under the will, which corporation was a competent trustee of a charitable use, and was lawfully authorized to receive and hold the property thus devised and bequeathed for the purposes of the trust named in the will, viz., the support of old and needy ministers of the Cumberland Presbyterian Church. Pritchard on Wills (2 Ed.), secs. 183, 185, 187, 191; Carson v. Carson, 115 Tenn., 37, 50, 88 S. W., 175; Milligan v. Greeneville College, 156 Tenn., 495, 502, 503, 2 S. W. (2d), 90.

6. What we have said responds, we think, to all of appellant's assignments of error, although we have not followed the order of their assignment. It results that all of the assignments of error are overruled, and the decree of the chancery court is affirmed, and a decree will be entered accordingly. The costs accrued in the chancery court will be paid as adjudged by the chancellor. The costs of the appeal will be adjudged against the appellant, Mrs. Clara Metta Rogers.

Crownover and DeWitt, JJ., concur.