ELIZABETH FRANCES SULLIVAN FOWLER, appellee, v. U. W. LOWE, executor of estate of ANNA SULLIVAN, et al., appellants; Rev. F. W. McKINLEY, pastor of St. Mary Church, a corporation of Williams, Iowa, et al., defendants.

No. 47592.

(Reported in 42 N.W.2d 516)

1094

MAY 5, 1950.

REHEARING DENIED OCTOBER 23, 1950.

William D. Guthrie, of Webster City, and Kelleher & Kelleher, of Fort Dodge, for appellants.

Phelan, Karr & Karr, of Webster City, for appellee.

MULRONEY, J.—The plaintiff was a foundling from some New York institution, who was taken into the home of John and Margaret Sullivan in Williams, Iowa, in 1889. She was four years old at the time and about two years later Margaret Sullivan died. Thereafter John Sullivan maintained the plaintiff in homes in the vicinity of Williams, and in a boarding school in Fort Dodge until 1895 when John Sullivan married Anna Cassidy. Thereafter plaintiff lived in the farm home of John and Anna Sullivan until her marriage to Hugh Fowler in 1909. After her marriage she and her husband lived part of the time in the Sullivan home, and the rest of the time on a farm near the Sullivan home, until May 28, 1938, when John Sullivan died intestate at the age of ninety-five. Anna Sullivan died testate in January of 1948. John Sullivan left a small amount of personal property and a farm of 251 acres, and the will of Anna Sullivan provided for a few specific bequests—none of them in favor of plaintiff—and the residue to St. Thomas Catholic school in Webster City.

On May 7, 1948, plaintiff filed her suit against the executor and legatees of Anna Sullivan's estate claiming she was entitled to a two-thirds interest in the 251-acre farm since the death of John Sullivan, because she was the adopted daughter of John Sullivan, and entitled to the other one-third interest in said farm since the death of Anna Sullivan because she was the adopted daughter of Anna Sullivan. The petition did not allege a legal adoption by the Sullivans, but did allege facts and a filial relationship, which the petition alleged estopped those claiming through the Sullivans from denying to plaintiff the rights and status of an adopted child of the Sullivans.

The defendants, the executor and residuary legatee of Anna Sullivan's estate, answered denying that they were estopped to

show that plaintiff was not adopted by John and Anna Sullivan and they further alleged that John Sullivan had deeded the farm in question to his wife and she had died testate leaving no part of her property to plaintiff.

In plaintiff's reply she alleged the deed referred to in defendants' answer "was never known to or considered by Anna Sullivan as a valid deed, but instead Anna Sullivan as administratrix of the estate of John Sullivan administered the real estate referred to therein as a part of the property of said John Sullivan."

Some thirty witnesses testified in behalf of plaintiff, telling the story of the home life of the Sullivans (John and Anna) and the position of plaintiff in that household. The defendants' testimony consisted mainly of the deed and the estate proceedings of Anna Sullivan. At the conclusion of the testimony the trial court held: (1) The evidence was sufficient to establish an estoppel against defendants from asserting that plaintiff was not adopted by John Sullivan (2) the evidence was insufficient to establish an estoppel against the defendants from asserting that plaintiff was not adopted by Anna Sullivan (3) the evidence established the existence of an agreement "whereby John Sullivan was to leave plaintiff such a share of his property as a natural child would inherit if he had one", and (4) the deed being without consideration was in fraud of said agreement. Based on this finding the trial court decreed a two-thirds interest in the farm in plaintiff. The defendants appeal from this decree and plaintiff cross-appealed from that portion of the decree which failed to give her the other one-third interest in the farm.

While there are many divisions in the six briefs, it can be stated generally that the questions presented on defendants' appeal are: (1) Was the evidence sufficient to establish an agreement whereby John Sullivan was to *leave* the plaintiff a child's share of his property—in other words a contract of inheritance? (2) Was the deed valid? (3) Was the evidence sufficient to establish an estoppel against the defendants from asserting that plaintiff was not adopted by John Sullivan?

I. No contract of inheritance whereby John Sullivan agreed to *leave* plaintiff any property was alleged in plaintiff's petition. The only agreement alleged in the petition is that the "Sullivans

agreed to adopt the said plaintiff and to permit her to inherit their property."

No contract to inherit is implied from an agreement to adopt. As stated in Page on Wills, Lifetime Ed., section 1724: "A contract to adopt a child does not imply a covenant to devise property to it." See also Brown v. Blesch, 270 Mich. 576, 259 N.W. 331, and annotation 97 A. L. R. 1015. The pleading of an agreement to permit inheritance is hardly a pleading of a contract of inheritance. Nor was the proof sufficient to establish an *agreement* by John Sullivan to leave his property to plaintiff. We have held the proof to establish a parol contract of inheritance must be "clear, satisfactory and convincing." Sharpe v. Wilson, 181 Iowa 753, 161 N.W. 35; Stiles v. Breed, 151 Iowa 86, 130 N.W. 376.

The few statements of John Sullivan, testified to by witnesses, wherein John Sullivan expressed an intention to leave his property to plaintiff, or that she would inherit his property, are no more than expressions of donative intent. They do not tend to establish that John Sullivan had made a contract that would prevent him from doing what he liked with his property. One cannot find in such testimony a contract which would deprive him of the right to dispose of his property as he saw fit. In re Estate of Rich, 199 Iowa 902, 200 N.W. 713; Boeck v. Milke, 141 Iowa 713, 718, 118 N.W. 874, 876; Steele v. Steele, 161 Mo. 566, 576, 61 S.W. 815, 818. Of similar expressions in Boeck v. Milke, supra, we said they showed "an intention, on the part of [deceased], to give his property to plaintiff, and they lend little countenance to the idea that he had already made such a definite and specific contract to do so as to prevent his changing his mind * * *." In Steele v. Steele, supra, such statements were held to be "nothing more than the expression of an expectation."

We hold that the trial court's finding that an agreement existed whereby John Sullivan was to leave a child's portion of his property to plaintiff cannot be supported by plaintiff's pleading or proof.

II. Plaintiff's pleading is also insufficient with respect to presenting a challenge to the validity of the deed. At the time the deed was introduced, plaintiff's only objection was

"that the record affirmatively shows the decedent, Anna Sullivan, abandoned all claim to the real estate described therein and abandoned the said deed referred to * * * by reason of her conduct in the estate of John Sullivan deceased." The deed was introduced in evidence and the original deed has been certified to this court. It is perfectly obvious that the date in the body of the deed and in the acknowledgment has been changed. The original dates, August 7, 1938, have been changed in each instance to August 7, 1936, by writing over the numeral 8 in 1938 the numeral 6. The grantee's name is spelled Annia Sullivan and along the margin of the deed is the notation "hold in escrow."

The trial court found the deed was "highly questionable— that the changing of the dates from 1938 to 1936 raises a serious question as to whether there ever was a valid execution of the deed in the first place." But he went on to hold that even if valid and intended as a conveyance of the fee to Anna Sullivan, the conveyance, being without consideration, would be "subject to the rights of the plaintiff under the agreement which must be held to exist, whereby John Sullivan was to leave plaintiff such a share of his property as a natural child would inherit if he had one." Accordingly the trial court decreed plaintiff was entitled to a two-thirds interest in the farm.

Probably plaintiff's entire argument against the validity of the deed could be disposed of by holding its validity was not questioned by plaintiff's pleading or objection heretofore set forth. But, assuming the issue of the validity of the deed is properly in issue, the record would not sustain a holding of its invalidity. The plaintiff had the burden of proof on such an issue.

The only person who testified with respect to the execution and delivery of this deed was D. Titsworth, the notary on the deed. He is the station agent at Webster City and had been the station agent at Blairsburg. He said he prepared the deed in his railroad office in Blairsburg; that John Sullivan was there and "Dr. Pease and W. C. Merryman as witnesses as to Mr. Sullivan, who made his X." He said he gave the deed to Mr. Sullivan and he saw him give it to Mrs. Sullivan in their farm home near Williams and the deed was handed back to

him and he held it until shortly after John Sullivan died, when he had it recorded at Mrs. Sullivan's request. On cross-examination he said the farm "was put to her use as long as she lived." He put the notation on the deed "hold in escrow."

III. Plaintiff argues that the deed was never legally executed or delivered and that it was prepared after the death of John Sullivan. This argument seems to be based on .the appearance of the instrument. But the date of a deed is immaterial. It became effective when executed and delivered. A deed "is good without a date, or with a false or impossible date, where the real date when the deed was given or delivered can be proved." 26 C. J. S., Deeds, section 22f. With such positive proof of the execution and delivery of the deed in the grantor's lifetime the date change on the instrument was an immaterial alteration. There is no presumption of invalidity of the deed because of the obvious date change and there was no duty on the part of the defendants to explain the date alteration on the instrument—especially when the date of the instrument was rendered completely immaterial by proof of execution and delivery. University of Illinois v. Hayes, 114 Iowa 690, 87 N.W. 664. The appearance of the instrument did not even present a conflict in the testimony as to the date of execution and delivery. We have upheld mortgages and deeds upon the proof of the notary against the positive denial of the mortgagor and grantor. In Herrick v. Musgrove, 67 Iowa 63, 64, 24 N.W. 594, 595, we said: "* * * the certificate of the notary public, and his positive testimony, should prevail over the denial of the defendant [mortgagor]."

And in Vanderveer v. Warner, 191 Iowa 1106, 1111, 183 N.W. 472, 474, where the grantor denied execution of a deed we said: "The testimony of the notary, who is disinterested, and who would be guilty of a crime for a false certification * * *, and her certificate, are entitled to weight."

In addition to the certificate there are on this instrument the signatures of two witnesses to the signature of John Sullivan. Mr. Titsworth said he understood Merryman was dead but he thought Dr. Pease was alive and located some place in the northern part of the state. Elsewhere in the record we learn Dr. Pease was the doctor who attended Mr. Sullivan during his last

illness. We cannot lightly assume these men bore false witness to the instrument. Plaintiff cannot argue the deed was drafted for execution on the date it once bore—August 7, 1938. The instrument was placed on record in June of 1938. The entire record compels a conclusion that the deed was executed and delivered to the grantee on or about August 7, 1936.

Before leaving the point, it is well to point out Titsworth's gratuitous legal interpretation of the transaction that "it [the farm] was put to her use as long as she lived" was immaterial. The deed was a conveyance of the fee and his understanding of the transaction was unimportant. Plymale v. Keene, 76 Mont. 403, 247 P. 554.

■ IV. There is no merit in the argument advanced that Anna Sullivan did not "consider" the deed a valid deed or that she "abandoned" the real estate and the deed. It is based on her actions as administratrix of the estate of John Sullivan. In the inventory in that estate she listed the farm as property of the estate and later secured a court order authorizing renewal of the mortgage on the farm. But in her final report she stated: "that on August 7, 1936, John Sullivan executed a warranty deed to his wife of all the real estate that he then owned; and there was a first mortgage for the sum of $12,000 against said premises and a second mortgage of $1810 with a large amount of accumulated interest on said second mortgage. That said farm was appraised for the sum of $20,000. That decedent left no issue and under section 12017 of the 1939 Code of Iowa Anna Sullivan, surviving widow, is entitled up to $7500 after payment of expenses of administration of said estate. That even assuming the real estate was part of the estate left by decedent, the net estate would be considerably short of $7500."

There is no necessity of pursuing the argument based upon what Anna Sullivan considered as to the validity of the deed or her alleged abandonment. After the deed was executed and delivered to her she received the title and her actions with respect to her husband's estate could not divest her of that title.

■ Since we have already held there was no contract of inheritance between John Sullivan and plaintiff, the deed was not in fraud of any rights of plaintiff.

V. Because we hold there was no contract of inheritance and the deed was valid we do not reach the issue as to whether the evidence was sufficient to establish an estoppel against the defendants from asserting plaintiff was not the adopted daughter of John Sullivan. If we were to hold the defendants were so estopped or if plaintiff were in fact the legally adopted daughter of John Sullivan it would avail her nothing. No case is cited by plaintiff holding that adoption imports or implies a contract whereby the adopting parent or parents agree not to make a disposition that disinherits the adopted child.

An agreement to adopt does not prevent the person making the agreement from disposing by will of all his property to persons other than the adopted child. Minetree v. Minetree, 181 Ark. 111, 26 S.W.2d 101; O'Connor v. Patton, 171 Ark. 626, 286 S.W. 822; Wilson v. Wood, 69 Cal. App. 552, 231 P. 1010; Stiles v. Breed, 151 Iowa 86, 130 N.W. 376; Finger v. Anken, 154 Iowa 507, 131 N.W. 657; 1 Am. Jur., Adoption of Children, section 60; 97 A. L. R. 1015; 1 C. J., Adoption of Children, section 21b; 2 C. J. S., Adoption of Children, section 27(2).

The rule stated by the note writer in 97 A. L. R. 1015 is:'

"Leaving out of consideration any contract rights to which the adopted child may be entitled, it is universally held that the adopted child acquires only the rights which a natural child would have, and no more; and that, like a natural child, he may be disinherited and cut off from any share in the estate of the adopting parents."

Some fifty cases are cited in support of the above rule and there are no contrary opinions cited.

In Finger v. Anken, supra, where it was sought to prove testator undertook to adopt plaintiff, this court said at page 511 of 154 Iowa:

"Even if this were possible, however, no advantage could be attained thereby for adoption would not confer rights greater than that of a natural child and these would be of no avail as against disposition of property by will. Nor is it perceived on what theory damages might be recovered, for, had plaintiff been adopted as we think Anken promised, her status would not have been other than that of a daughter, and this would not have

entitled her to any interest in the property as against its testator's disposition. To authorize a finding in plaintiff's favor, there must have been something more than an agreement to adopt. There must have been a distinct promise that upon his death plaintiff should share in his estate."

The holding in the above authorities is that an adopting parent is free to cut off an adopted child from a share in his estate by a will. They apply with equal force where the adopting parent disposes of his property before death. The record shows John Sullivan was ninety-three years old at the time he gave this deed to his aged wife. He was sick. He had become financially involved in his later years so this small equity in the home farm was all he owned. In his more prosperous days he had given plaintiff an eighty-acre farm. Even if plaintiff were his legally adopted daughter he was free to show his affection and gratitude to the wife, with whom he had lived for nearly half a century, by conveying to her the remaining equity in the home farm.

VI. What we have said in the last division disposes of plaintiff's appeal. The trial court held the evidence insufficient to establish an estoppel against the defendants from asserting plaintiff was not Anna's adopted daughter. We agree with this conclusion but in any event if she were Anna's adopted daughter she could take nothing unless she proved a contract that would prevent Anna from disinheriting her. If it be thought such a contract was pleaded the evidence falls far short of establishing it.—Reversed on defendants' appeal and affirmed on plaintiff's appeal.

BLISS, C.J., and OLIVER, HALE, GARFIELD, and SMITH, JJ., concur.

WENNERSTRUM, MANTZ and HAYS, JJ., concur in result.