HERMAN OLIVER HALE, appellant, v. IOWA-DES MOINES NATIONAL BANK & TRUST COMPANY, executor of estate of HENRY O. HALE, et al., appellees.

No. 47956.

(Reported in 51 N.W.2d 421)

.304

FEBRUARY 5, 1952.

Miller, Davis, Hise & Howland, of Des Moines, and Phelan, Karr & Karr, of Webster City, for appellant.

J. B. Cross, Loth & Melton, and Helsell, Burnquist & Brad-shaw, all of Fort Dodge, and Smedal, Maurer & Clark, of Ames, for appellees.

OLIVER, J.—Under the will of her father, who died in 1921, Elizabeth Farley (Hale) took the major share of his $700,000 estate which was largely in municipal bonds. Decedent Henry O. Hale had married Elizabeth in 1920. He had no property, was uneducated and was able to read and write with difficulty. They lived in Fort Dodge. They were childless, desired to adopt a child or children and, after some correspondence, secured plaintiff from Christian Home Orphanage, Council Bluffs, early in 1923. Plaintiff was then age seven years.

Henry and Elizabeth renamed plaintiff Herman Oliver Hale and he was known generally by that name. They became deeply attached to him and were anxious to adopt him without delay but the rules of the orphanage required a trial period of three months. In April 1923 the orphanage executed and delivered to the Hales articles of adoption for plaintiff, to be executed by the Hales and recorded as required by statutes then in effect. The Hales consulted their attorneys and were advised the right of the orphanage to give the child in adoption should be first determined to avoid the possibility of litigation with one of the natural parents which, after the passage of years, might deprive them of the child or expose them to demands for money. The attorneys investigated the matter for some time but apparently the Hales were never satisfied the proposed adoption would be valid. Hence, the adoption papers were merely held by the Hales and were never executed by them.

In 1924 the Hales wrote the orphanage they would like to take a little girl, stating: "Of course, if the records are as they were regards Herman we would raise her as our own. Adopt just before of age."

The Hales secured this girl from the orphanage about September 1924. They renamed her Betty Hale and became much attached to her. However, neither Betty nor plaintiff was ever regularly adopted by the Hales in conformity to the statutes.

The two children were reared together and appeared to occupy the position of natural children in the Hale household.

The Hales were proud of both children and affectionate to both. Both children were affectionate and obedient to the Hales. They called the Hales "father" or "dad" and "mother" or "mom". The Hales referred to them as their children, son and daughter or adopted children and they were registered in the records of the church, school, etc. as Herman Oliver Hale and Betty Hale.

The record indicates the family lived together in amity until about 1937 when Henry developed a violent dislike to Herman. Herman was taken out of school but apparently continued to live with the Hales until he was married in August 1937. In May 1937 Betty married and left the Hale home.

In 1924 Elizabeth gave Henry a bill of sale to a one-half interest in the municipal bonds received from her father's estate. In 1929 they made reciprocal contracts whereby each attempted to transfer to the other all of his or her property then or thereafter owned, the use and enjoyment thereof to take effect upon the death of the transferor. In 1931 Elizabeth inherited from her mother the remainder of the Farley property. In 1932 Elizabeth and Henry made reciprocal wills, by which all the estate of each was willed to the other. In 1933 Elizabeth executed a will and in 1935 a codicil thereto.

July 7, 1937, Elizabeth made her last will which gave the bulk of her estate to Henry. Herman was willed $30,000 and a quarter section of land. Betty was given $5000. Elizabeth died May 5, 1938. After her will was admitted to probate an action was brought to set aside the probate, based upon mental incapacity and undue influence. Upon appeal to this court in Campbell v. Hale, 233 Iowa 264, 6 N.W.2d 128 (in which the writer did not join), it was held the evidence in support of neither charge was sufficient to warrant its submission to the jury, and the will was adjudicated to be valid.

Three months after the death of Elizabeth, Henry married defendant Cora (Hale). Henry died February 7, 1948, leaving a will made in 1947, which devised his estate in trust for the support and benefit of his widow, defendant Cora Hale, for her life, remainder to collateral heirs. The will was admitted to probate after a contest. Cora elected to take her distributive share of Henry's estate.

This case was instituted in 1949. Paragraph 6 of the petition alleges:

"That on or about the 29th day of January, 1923, this plaintiff was obtained by Elizabeth C. Hale and Henry Oliver Hale, wife and husband, and placed in their home, under an agreement by them to adopt this plaintiff and permit him to inherit their property at the death of the survivor of the said Elizabeth C. Hale and Henry Oliver Hale."

The petition states also that thereafter they treated him as their son and he rendered them the obedience, love, affection, assistance and services of a son and performed all his duties as their adopted son; that upon the death of Henry, plaintiff became the owner of two thirds of his property. Plaintiff prayed he be adjudged to have the status of a son of Henry by adoption; that an adoption by estoppel be recognized and enforced; that the contract to permit plaintiff to inherit the property of his father, Henry Oliver Hale, be specifically enforced and plaintiff be adjudicated to own two thirds of said property, and for general equitable relief.

I. The trial court found the correspondence between the Hales and the orphanage reflected the substance of the agreements and intent of the parties and that there were no collateral or supplemental agreements. Although this correspondence shows it was the original intention of the Hales to adopt Herman, there is nothing in it to indicate any agreement on the part of the Hales that Herman would inherit their property or that they or either of them would devise all or any part of it to him. In the adoption papers executed by the orphanage upon its printed form the only reference to specific obligations undertaken by the Hales is that they shall properly feed and clothe the child and give him the advantages of a good common school education. The papers state also, in substantially the language of the statute, that the child shall have the same rights, privileges and responsibilities as a natural, legitimate child.

In Fowler v. Lowe, 241 Iowa 1093, 1096, 1097, 42 N.W.2d 516, 518, as in the case at bar, many witnesses testified in behalf of plaintiff telling the story of the home life of the so-called

308

adoptive parents and the position of plaintiff in that household. That decision states:

"No contract of inheritance whereby John Sullivan agreed to *leave* plaintiff any property was alleged in plaintiff's petition. The only agreement alleged in the petition is that the 'Sullivans agreed to adopt the said plaintiff and to permit her to inherit their property.'"

(That is the only agreement alleged in the case at bar. See paragraph 6 of the petition hereinbefore set out.)

■ Continuing, Fowler v. Lowe, supra, states:

"No contract to inherit is implied from an agreement to adopt. * * * 'A contract to adopt a child does not imply a covenant to devise property to it.' * * * the proof to establish a parol contract of inheritance must be 'clear, satisfactory and convincing.' Sharpe v. Wilson, 181 Iowa 753, 161 N.W. 35; Stiles v. Breed, 151 Iowa 86, 130 N.W. 376."

In the case at bar there was no direct evidence of any inheritance agreement or contract to devise property to plaintiff. Counsel rely upon a few statements by the Hales that Henry and Betty would eventually inherit their property. Quoting again from Fowler v. Lowe, supra, the statements were "no more than expressions of donative intent. They do not tend to establish that John Sullivan had made a contract that would prevent him from doing what he liked with his property. One cannot find in such testimony a contract which would deprive him of the right to dispose of his property as he saw fit. In re Estate of Rich, 199 Iowa 902, 200 N.W. 713; Boeck v. Milke, 141 Iowa 713, 718, 118 N.W. 874, 876; Steele v. Steele, 161 Mo. 566, 576, 61 S.W. 815, 818. Of similar expressions in Boeck v. Milke, supra, we said they showed 'an intention, on the part of [deceased], to give his property to plaintiff, and they lend little countenance to the idea that he had already made such a definite and specific contract to do so as to prevent his changing his mind * * *.' In Steele v. Steele, supra, such statements were held to be 'nothing more than the expression of an expectation.'"

■ There are many cases of the general nature of the case at bar in which the heirs of one who died intestate and possessed

of his property were held estopped to deny the adoption of the plaintiff by the intestate. In those cases recovery was had, based upon adoption by estoppel. However, when the alleged adoptive parent dies testate the establishment of adoption by estoppel does not entitle a claimant to recover against the beneficiaries under the will of such parent. Nor, for that matter, would proof of legal adoption or of birth to decedent in lawful wedlock. A parent may deprive a child of a share in his estate by will or by disposing of his property before death, in the absence of a valid agreement disabling him from so doing. Fowler v. Lowe, 241 Iowa 1093, 1101, 42 N.W.2d 516, 521, states:

"An agreement to adopt does not prevent the person making the agreement from disposing by will of all his property to persons other than the adopted child. Minetree v. Minetree, 181 Ark. 111, 26 S.W.2d 101; O'Connor v. Patton, 171 Ark. 626, 286 S.W. 822; Wilson v. Wood, 69 Cal. App. 552, 231 P. 1010; Stiles v. Breed, 151 Iowa 86, 130 N.W. 376; Finger v. Anken, 154 Iowa 507, 131 N.W. 657; 1 Am. Jur., Adoption of Children, section 60; 97 A. L. R. 1015; 1 C. J., Adoption of Children, section 21b; 2 C. J. S., Adoption of Children, section 27(2)."

The trial court found "no evidence that there was anything specific or implied impairing the right of Elizabeth C. Hale and Henry O. Hale, or either of them, to handle, transfer, alienate, devise or bequeath their property as they wished."

II. Paragraph 6 of plaintiff's petition, hereinbefore set out, alleges, in January 1923 plaintiff was obtained by Elizabeth and Henry and placed in their home "under agreement by them to adopt this plaintiff and permit him to inherit their property at the death of the survivor." In the opening briefs filed herein both sides assumed the pleaded agreement was made by the Hales with the orphanage. However, plaintiff has changed his position in his reply brief in which it is contended, for the first time, there was a contract between Elizabeth and Henry for the benefit of Herman that Herman should inherit their property and also that Betty might share in it. Plaintiff contends this contract was made about the time Herman and Betty were taken by the Hales. We do not determine the questions of the right of plaintiff to mend his hold at this stage of the appeal and whether the

pleadings were sufficient to cover the contract claimed in plaintiff's reply brief.

█ In February 1938 Herman alleged, under oath, in another case "that the agreement was between the said orphans home and Henry O. Hale and Elizabeth C. Hale that the said Hales would adopt the plaintiff * * *." There is no direct evidence the Hales made any contract between themselves when they took Herman and Betty, but plaintiff contends it is established by circumstantial evidence. The principal circumstances relied upon are certain written contracts and wills of Elizabeth and Henry, to some of which we have already referred. These were considered by Judge Nordbye in Hale v. Campbell, 46 F. Supp. 772.

In 1929 and 1932 respectively, the Hales made reciprocal survivorship contracts and mutual wills, designed to pass all their property to the survivor. Early in 1933 various drafts of tentative new wills were considered by them. It appears Elizabeth, in October 1933, executed a will which gave certain land to trustees for Betty and Herman and the bulk of her estate to Henry, if he survived testatrix. In case he did not survive her the will created a trust for the benefit of Herman and Betty. This trust would have taken a large part of the estate. In Hale v. Campbell, 46 F. Supp. 772, Judge Nordbye found Henry did not make a new will, and that Elizabeth's 1933 will was not a mutual will.

█ Mutual wills and the circumstances surrounding their preparation and execution frequently have been held sufficient to establish there was a prior agreement to make such mutual wills. Maurer v. Johansson, 223 Iowa 1102, 1107, 274 N.W. 99; Luthy v. Seaburn, 242 Iowa 184, 189, 46 N.W.2d 44, and citations. However, in the absence of explanatory language, the prior agreement established is merely that the property be disposed of by the mutual wills as therein provided.

If it be assumed for the purpose of argument that in 1933 the Hales executed mutual wills which provided a substantial trust for Herman and Betty upon the death of both the Hales, such circumstances would not tend to prove the wills were made in performance of an agreement claimed to have been made about 1923. Nor would such circumstances tend to prove the existence of such agreement.

■ That neither of the Hales regarded Elizabeth's will as irrevocable or as contractual in nature is indicated by the conduct of Elizabeth in making her 1937 will which revoked her earlier will and the conduct of Henry in actively making arrangements therefor. Henry's last will was made in 1947. This court has stated that in a joint or mutual will for the benefit of the survivor there is an element contractual in nature, from which either party may recede, with notice to the other, in the lifetime of the latter, and where provision is made for third parties their rights are equally fixed by the terms of the mutual will. Child v. Smith, 225 Iowa 1205, 1214, 282 N.W. 316, 321; Luthy v. Seaburn, 242 Iowa 184, 190, 191, 46 N.W.2d 44, 48. In making her 1937 will Elizabeth, with notice to Henry, receded from her 1933 will. Even though the 1933 will had been a mutual will this would have terminated it.

It is our conclusion the evidence does not establish any contract between Henry and Elizabeth Hale that Herman should inherit a part or all of their property.

We agree with the conclusion of the trial court that no contract of inheritance was shown.

The various propositions, other than those referred to herein, presented by the record and briefs have been considered. However, their determination is deemed unnecessary to this opinion. The case was well tried and ably argued. The findings of fact and conclusions of law of the trial court show it was carefully considered.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.