AGNES KANEALY et al., executrices of estate of ANNE W. LENDERS, petitioners, v. HON. J. E. HEISERMAN, Judge of Eighteenth Judicial District, Respondent.

No. 48269.

(Reported in 57 N.W.2d 799)

April 8, 1953.

Barnes, Wadsworth, Elderkin & Locher, of Cedar Rapids, for petitioners.

Crissman & Bleakley, of Cedar Rapids, for respondent.

WENNERSTRUM, J.—By reason of an original writ of certiorari directed to the respondent we are presented the question whether the district court exceeded its authority in its rulings in the particular proceeding which is here under consideration. The respondent has filed a return wherein is incorporated preliminary proceedings in the estate of Anne W. Lenders, deceased. The particular question presented is whether the court exceeded its authority and jurisdiction in refusing to sustain objections to questions asked a witness pertaining to a joint bank account previously held by the heretofore referred to decedent and Ellen E. Kanealy.

The hearing in the district court developed by reason of an application brought by a temporary executor of the estate of Anne W. Lenders, deceased, for an examination and questioning of Ellen Kanealy, Agnes Kanealy and Katherine K. Miles, sisters of and executrices of the estate of Anne W. Lenders, deceased, pertaining to joint savings accounts. We are particularly concerned with the rights, authority and limitations given the district court under the provisions of section 635.14, 1950 Code. This statute gives to the district court the right to require any person suspected of having wrongful possession of any of the effects of a deceased to appear and submit to an examination under oath touching such possession or ownership. If on such examination it appears that the person examined has the wrongful possession of any such property, the court or judge may order the delivery thereof to the executor or administrator.

From the return of the writ by the respondent and the record which has been certified to this court we learn that

A. W. H. Lenders and Anne W. Lenders each made separate wills dated January 8, 1940. At or about that time Mr. Lenders had an estate of approximately $60,000 and Mrs. Lenders had property of the approximate value of $500,000. In the will of Mr. Lenders there was a conditional bequest of $1000 and the residue of his estate was devised and bequeathed to his wife "to be hers absolutely." His will further provided that if his wife predeceased him then all the residue after the payment of taxes and the conditional bequest should go to the surviving of thirteen named beneficiaries in certain proportions. The will of Mrs. Lenders, after making certain specific bequests of clothing and jewelry, bequeathed and devised the residue of her estate to her husband "to be his absolutely", with the provision that the residue, if her husband predeceased her, should go to the same residuary legatees named in her husband's will and in the same proportions. They were also set forth in her will. It will be observed that in each of the said wills the devise and bequest is to the surviving spouse "to be (his or hers) absolutely." Without in any way endeavoring to determine the effect of the claimed mutual wills, we feel we are justified in calling attention to the fact that the residuary legatees were to receive the proportionate division of the estate noted in the will if there be no surviving spouse.

The will of Mr. Lenders was admitted to probate on July 13, 1944, following his death. Mrs. Lenders was named as executrix of her husband's estate and acted as such to the date of her death on February 3, 1947. There is no question but that she accepted the benefits of her husband's will. Her will was admitted to probate together with a codicil dated August 3, 1944. In this codicil the petitioners herein were named as executrices of Mrs. Lenders' estate.

Following the death of Mr. Lenders, Anne W. Lenders transferred, apparently without consideration, money and property of a value in excess of $87,000 to her sisters, the petitioners herein.

By reason of an application presented to the trial court, wherein the foregoing facts were in part set forth, an order was entered appointing Blake Shipton, an attorney at law, as tempo-

rary executor of the estate of Anne W. Lenders and he was authorized to employ counsel and to institute such proceedings as might be later authorized by the court. This temporary executor made application for an order directing him to commence proceedings against the three sisters named as executrices of the estate of Anne W. Lenders, deceased, and for an order requiring them to appear and submit to an examination under oath pertaining to certain assets which it is claimed belong to the estate of the decedent. Following a hearing on said application the court directed the three sisters to appear before it and submit to such an examination.

In the inventory filed in the estate proceedings of Anne W. Lenders the following is set forth: "Joint savings account, Merchants National Bank, Cedar Rapids, Ellen E. Kanealy or Anne Lenders—$25,963.11."

In the particular proceeding which is here before us for consideration Ellen Kanealy was called as a witness by the temporary executor, and her testimony, as material to the issues here involved, is in part as follows:

"Q. After Adolph died did your sister establish any bank accounts? A. Yes. Q. In which you participated? A. Yes. Q. And in what bank did she establish those accounts? A. Merchants National of Cedar Rapids. * * * Q. What kind of a bank account was it that your sister Anne established in the Merchants National Bank? A. Well, it was about $600 in a checking account. * * * Q. Now did you and your sister Anne have any other bank accounts? A. Yes. Q. And where did you have those? A. In the Merchants National, Cedar Rapids. Q. And what kind of accounts were those? A. Well, it was a joint account. * * * Q. Was it a savings account or a checking account? A. Savings account. * * * Q. And how much was originally deposited in that account? A. $25,000. Q. And who deposited that? A. My sister did; Mrs. Lenders did. Q. Now did you make any withdrawals from that account while she was living? A. No. Q. Did you make any withdrawals from that savings account after she died? A. Not personally, that is not for myself alone. Q. Well, how was this account opened, in whose names was it opened? A. Mine and Mrs.

Lenders'. Q. Well, if Mrs. Lenders was dead who else could withdraw from this account? A. Well, it was mine. * * * Q. Well, when did you withdraw anything from this account? A. Well, it was probably—it was possibly a year or more. Q. A year or more after your sister died? A. After she died. Q. How much did you withdraw——

"Mr. Elderkin: That is objected to as without the scope of this discovery examination, entirely incompetent, irrelevant and immaterial.

"The Court: * * * she may answer. A. Well, I divided that with—divided it among the three of us. * * * Q. How much did you divide among the three of you?

"Mr. Elderkin: Just a moment, we renew our objection, the same objection as last above made, wholly immaterial, has gone way beyond the scope of proper examination.

"The Court: She may answer. A. One third each. Q. Well, how much was it in dollars and cents, Miss Kanealy? * * * A. Well, it was—the amount was a little over $26,000. Q. And you divided that three ways? A. Yes. Q. Did your sister Katherine get one third of it, did you give it to her? A. Yes. Q. Did your sister Agnes get another third of it? A. Yes. Q. And you retained one third of it? A. Yes. * * * Q. When did your sister Anne tell you that she wanted you to divide this money three ways after her death, among you and Agnes and Katherine?

"Mr. Elderkin: Just a moment; objected to first of all for all the reasons stated in the last objection; secondly that it calls for the opinion and conclusion of this witness as to when and what was said, it assumes a state of facts not shown by the record, it has absolutely no bearing on the discovery of any assets, and bearing upon the title to any assets.

"The Court: She may answer."

At this stage of the proceeding a request for a recess was asked and granted. Shortly thereafter a petition for a writ of certiorari was presented to Honorable G. K. Thompson, a member of this court, and it was granted. We are therefore presented with the question whether the trial court exceeded its authority

in the rulings it made in the light of the particular type of hearing and proceeding that was before it for consideration.

I. Section 635.14, 1950 Code, is a discovery statute. Its purpose is to assist the representative of the estate in obtaining possession of all the property of the deceased. Duro v. Ladd, 235 Iowa 185, 189, 16 N.W.2d 244; Barto v. Harrison, 138 Iowa 413, 418, 116 N.W. 317.

II. If upon examination under the statute it appears that the title to the property concerning which the examination is being made is in dispute, or that there is some controversy whether the estate is entitled to it, then the representative of the estate must follow the established procedure usually resorted to in order to adjudicate such issues. Barto v. Harrison, supra, at page 418, Volume 138 of the Iowa Reports; In re Estate of Hoffman, 227 Iowa 973, 976, 289 N.W. 720. In Findley v. Jordan, 222 Iowa 46, 48, 268 N.W. 515, 516, we held that where "* * * the testimony establishing the fact that an actual controversy as to the title of the property existed, it is evident the court had reached the point * * * where there remained no authority to make any order for delivery of the property to the administrator. When that point was reached the court had proceeded as far as its jurisdiction extended under the provisions and purposes of section 11925 [section 635.14, 1950 Code]. Petitioner's objection to further examination should have been sustained."

III. From the examination of the testimony which we have in part set out and from a review of the record as certified to us it is very apparent that there is a controversy, both legal and factual, whether the joint bank account which the petitioner took possession of belongs to the estate of Anne W. Lenders. Involved in this litigation is the question whether Mrs. Lenders, the testatrix, during her lifetime had a right to dispose of her own property or that received from her husband's estate. It must be first determined whether the two wills were mutual wills and whether there was a contract restricting the surviving party from disposing of her property during her lifetime. See 57 Am. Jur., Wills, section 710, page 479. There is also involved the further question concerning the effect of the provision of Mr.

Lenders' will which bequeathed and devised the residue of his estate to his wife "absolutely." There is also the question concerning the effect of the establishment of a joint account. See In re Estate of Winkler, 232 Iowa 930, 5 N.W.2d 153; O'Brien v. Biegger, 233 Iowa 1179, 11 N.W.2d 412. We feel that there was a controversy of ownership concerning the joint account and that the trial court was not justified in requiring the petitioner to answer any further questions concerning the matters in issue. Consequently the writ of certiorari heretofore issued is sustained.—Writ sustained.

SMITH, C. J., and BLISS, GARFIELD, HAYS, THOMPSON, and LARSON, JJ., concur.

OLIVER and MULRONEY, JJ., specially concur.

OLIVER, J. (specially concurring)—Section 635.14, Code of Iowa 1950, provides: "Discovery of assets. The court or judge may require any person suspected of having taken wrongful possession of any of the effects of the deceased, or of having had such effects under his control, to appear and submit to an examination under oath touching such matters, and if on such examination it appears that he has the wrongful possession of any such property, the court or judge may order the delivery thereof to the executor or administrator."

Such a proceeding is not the ordinary "discovery", the purpose of which is to obtain the disclosure of facts, writings etc. to be used as evidence. The purpose of a proceeding for the "Discovery of assets" is to secure the disclosure and compel the restitution of wrongfully withheld property of a decedent. Although inquisitorial in nature it is a proceeding to find and secure property rather than evidence. Where the testimony shows there is a controversy between the suspected person and the legal representative of the estate of the decedent, concerning the title to the property, the district court is without jurisdiction to proceed further with the examination. Findley v. Jordan, 222 Iowa 46, 268 N.W. 515. That is the situation in the case at bar. The property in question was a joint bank account in the name of "Ellen E. Kanealy or Anne Lenders" (the decedent),

which the former testified "was mine" after the death of Anne Lenders. When the testimony definitely showed the witness claimed the property for herself and others, as the surviving joint tenant in the bank account, the trial court should have terminated the proceeding for the discovery of assets.

The majority opinion refers to the wills of Mr. and Mrs. Lenders and speculates as to the effect of these wills and as to questions which could arise in some future proceeding involving the ownership of the property in question. I would omit these matters as immaterial to this case.

MULRONEY, J., joins in this special concurrence.