In re Estate of Anne W. Lenders, deceased.

No. 48941.

(Reported in 78 N.W.2d 536)

SEPTEMBER 18, 1956.

Crissman & Bleakley and David G. Bleakley, all of Cedar Rapids, for appellants.

E. H. Wadsworth and D. M. Elderkin, both of Cedar Rapids, for appellees.

GARFIELD, J.—The most important question on this appeal is whether gifts totaling about $88,000 in value, by testatrix in her lifetime, to her three sisters who were made executrices of her will, were in violation of an alleged oral agreement between testatrix and her husband who predeceased her. Following trial to the court in probate it was held such violation was not shown. We affirm the decision.

January 8, 1940, A. W. H. Lenders and Anne, his wife, executed mutual wills. Lenders died in July 1944, his will was probated August 4, his widow was made executrix and accepted the bequest in her favor of substantially the whole estate, valued at about $40,000. Anne died February 3, 1947, her will was probated in April and her three sisters were made executrices. The issues here arise from objections to their final report and their answers to the objections. Mrs. Lenders' estate was appraised at about $540,000. It consists of gifts from her husband in his lifetime or accumulations therefrom and the bequest under her husband's will.

In four different transactions after her husband's death Anne (testatrix) gave her three sisters money and property valued at about $88,000. None of it came to her under her husband's will. It is these gifts the three objectors who are legatees under Anne's will (Mr. Lenders' adopted daughter and her two sons) and the temporary executor of her estate allege were made in violation of an oral agreement between Anne and her husband.

Subject to a conditional bequest of $1000 the will of Mr. Lenders provides: "I give * * * my wife, Anne W. Lenders, providing she shall survive me, all the rest * * * of the property I may own at the time of my death, or to which I may in any manner be entitled, * * * to be hers absolutely * * *." If his wife should not survive him, his will leaves the "rest * * * of the property I may own at the time of my death, or to which I may be entitled" to those of thirteen named beneficiaries who survive him, in specified amounts, to be diminished or increased proportionately, depending on the size of his estate.

The will of Mrs. Lenders leaves her personal effects to her three sisters and provides: "I give * * * to my husband, A. W. H. Lenders, providing he shall survive me, all the rest * * * of the property I may own at the time of my death, or to which I may in any manner be entitled, * * * to be his absolutely." If her husband should not survive her, her will leaves "the rest * * * of the property I may own at the time of my death, or to which I may be entitled" to the same 13 beneficiaries named in her husband's will, in the same proportions.

The proportionate shares going to Anne's three sisters under her will total slightly less than two fifths (38.8%) of the whole estate, less the personal effects. Thus if Anne had not made the gifts here under attack the sisters would have taken under her will 38.8% of the net amount thereof.

The gifts from Anne to her sisters for which they, as executrices, are asked to account are these:

1) In August 1944 Anne deposited in a Cedar Rapids bank $25,365 in a joint savings account with her sister Ellen Kanealy. The money was proceeds of life insurance on her husband of which Anne was beneficiary. January 6, 1948, about eleven months after Anne died, Ellen withdrew this deposit, with accrued interest, and divided it among her two sisters and herself.

2) In August and September 1944 Anne deposited in a Chicago bank $21,000 in a joint account with her sister Katherine Kanealy Miles. The money was given her by her deceased husband's employer, Penick & Ford. Other deposits totaling $35,500 were subsequently added to this account from Anne's own funds. March 5, 1947, a month after Anne's death, there was a balance in this account of $9950 which Katherine withdrew as her own. She had also previously made two withdrawals totaling $1822 for herself from this account.

3) Anne elected to leave with Aetna Life Insurance Company $19,437, life insurance on her husband of which she was beneficiary, naming her three sisters as contingent beneficiaries. Anne did not withdraw this money and at her death Aetna paid $19,516 in equal shares to the sisters.

4) In December 1946 Anne gave her sister Katherine (Miles) 400 shares of Penick & Ford stock worth $82 a share. In 1926 her husband had given Anne 6000 shares of this stock.

1210

■ I. Appellees-executrices argue the remedy for breach of an agreement to make mutual wills is an action for damages for breach of contract or for specific performance and the probate court lacks jurisdiction to grant the relief prayed for by appellants-objectors. It is doubtless true appellants might have sued for breach of contract or for specific performance. In re Estate of Farley, 237 Iowa 1069, 1078, 24 N.W.2d 453, 457, 458; annotation 169 A. L. R. 9, 53; 57 Am. Jur., Wills, section 715; 68 C.J., Wills, section 207; 94 C.J.S., Wills, section 122.

If we assume, without so deciding, objectors were in error as to the kind of proceeding adopted, this is not ground for dismissal of their objections, but merely for transfer to the proper docket. Since the executrices made no motion to transfer the proceeding from the probate docket any error as to the form of action adopted was waived. Sections 611.7, 611.9, 611.12, Code, 1954.

■ We have repeatedly pointed out the district court in this state is only one court. Before it all proceedings come, whether law, equity or probate. If no motion is made to transfer to another docket the district court, sitting in probate, may hear and determine litigation which could or should have been brought at law or in equity. The point the executrices now raise relates at most to a mere procedural irregularity which they waived, and does not go to the court's jurisdiction. See In re Estate of Allen, 247 Iowa 618, 75 N.W.2d 241, and citations; Williams v. Morrison, 242 Iowa 1054, 1062, 1063, 48 N.W.2d 666, 670, and citations.

■ II. Appellants first assert error in the trial court's ruling Mr. O. N. Elliott was an incompetent witness under section 622.4, Code, 1954, which provides in substance, so far as now material, that no one interested in a proceeding may testify to any personal transaction or communication between him and a person deceased, against the executor or survivor of such decedent.

It is clear Mr. Elliott has a direct financial interest in the outcome of the proceeding. Testatrix' will leaves him $15,000, to be diminished or increased according to the size of the estate. It is equally plain he was examined in regard to personal trans-

actions and communications between him and testatrix. Although the executrices are of course parties to the action and Mr. Elliott was examined by objectors, they contend the executrices are not, under the circumstances here, parties who are protected by section 622.4. It is argued the executrices as such are mere nominal parties and the sisters' claim is as donees of gifts from testatrix.

We are clear the executrices as such are entitled to the protection of the statute and Ellen and Katherine are also protected as survivors of testatrix. The joint bank accounts in controversy were paid Ellen and Katherine respectively as surviving joint tenants with testatrix. This places them within the protection 622.4 affords a survivor. O'Brien v. Biegger, 233 Iowa 1179, 1211, 11 N.W.2d 412, 426, 427, and citations.

We need not determine whether one of the class section 622.4 protects, who is a mere nominal party to an action, may invoke the statute. No holding that he may not do so, where the party is an administrator or executor, has come to our attention. In re Estate of Conner, 240 Iowa 479, 489–491, 36 N.W.2d 833, 839, 840, and earlier precedents there cited hold a party to an action whose interest is only nominal is an incompetent witness under 622.4. It would seem from these decisions that a party to an action who is within the class 622.4 protects, although his interest is merely nominal, may invoke the statute.

In any event, we are agreed the executrices are more than nominal parties to this proceeding. It is true, like all executrices, they act in a representative capacity. But this does not make their interest merely nominal. The prayer of the amended objections to their final report asks that the executrices be ordered to account for all moneys and properties testatrix transferred to her sisters after her husband's death, that all compensation be denied them and they be required to return all allowances thus far received. Objectors argue they are entitled to such relief and to a holding the executrices conspired together to appropriate moneys and properties which should go to all the legatees.

After referring to similar contentions that an executor be required to account to certain beneficiaries of a will, In re

Estate of Conner, supra, at page 491 of 240 Iowa, page 840 of 36 N.W.2d, states: "These examples make it clear the executor was not a mere nominal or formal party to the action but was a real party in interest in his capacity as such." See also in support of our holding in this division Bell v. Pierschbacher, 245 Iowa 436, 445, 62 N.W.2d 784, 790.

III. Appellants next assign error in the court's failure to find, as their objections assert, there was a confidential relation between testatrix and her sister Katherine K. Miles in which the latter was the dominant person, thereby placing upon Katherine the burden to sustain the gifts to her within such decisions as In re Estate of Lundvall, 242 Iowa 430, 46 N.W.2d 535, and precedents there cited.

In urging this contention appellants are faced with a procedural hurdle it is rather difficult to clear. Since the action is in probate it is not reviewable de novo here but only upon the errors assigned. The court's findings have the force and effect of a jury verdict and, if supported by substantial evidence, will not be disturbed. Rule of Civil Procedure 334; In re Estate of Rorem, 245 Iowa 1125, 1130, 66 N.W.2d 292, 295, 47 A. L. R.2d 1089, and citations; In re Estate of Lundvall, supra, 242 Iowa 430, 433, 434, 46 N.W.2d 535, 537; In re Estate of Conner, supra, 240 Iowa 479, 487, 36 N.W.2d 833, 838.

In view of the rule just mentioned we are not justified in disturbing the finding it was not shown there was a confidential relation between testatrix and Katherine as the dominant person. The burden to prove such relation existed, as alleged by them, rested on appellants. In re Estate of Lundvall, supra, 242 Iowa 430, 435, 436, 46 N.W.2d 535, 538, and citation; Menary v. Whitney, 244 Iowa 759, 764, 765, 56 N.W.2d 70, 73, and citations.

The only evidence having any tendency to establish the claimed confidential relation is this given by Katherine, whose home was in Chicago, at an earlier hearing before the same judge and offered in the hearing now under review: "I was practically her (Anne's) secretary. I paid bills for her. We pay taxes in Chicago April 1st and I did that for her. * * * When Mr. Lenders became ill in 1943 I came out. (from Chicago)

and took charge of their house and stayed most of the time until 1947. * * * I was with Mrs. Lenders and took care of Mr. Lenders' insurance policies when he died."

In other testimony Katherine insisted in effect she acted pursuant to testatrix' wishes and instructions. There is no evidence to the contrary. So far as shown, testatrix was in excellent health and full control of her faculties. She had had business experience. We cannot say Katherine was in a confidential relation with and dominated her sister merely because she was "practically her secretary," paid taxes and other bills for her, took charge of the house and took care of Mr. Lenders' life insurance. It may well be that testatrix, rather than Katherine, was the dominant person in any relations between these sisters.

IV. Appellants assert error in the court's holding the evidence fails to show that in making the gifts in question testatrix breached a contract she made with her husband. As indicated at the outset this is the most important question upon this appeal.

■ Appellants had the burden to prove by clear and satisfactory evidence the alleged oral agreement they rely upon. Johansen v. Davenport Bank & Trust Co., 242 Iowa 172, 173, 46 N.W.2d 48, 49, and citations; Hatcher v. Sawyer, 243 Iowa 858, 864, 52 N.W.2d 490, 493; In re Estate of Edwards, 3 Ill.2d 116, 120 N.E.2d 10, 14, and citations; 94 C.J.S., Wills, sections 113(2), 126; 57 Am. Jur., Wills, section 728. See also Bell v. Pierschbacher, supra, 245 Iowa 436, 439, 440, 62 N.W.2d 784, 786, and citations; Fowler v. Lowe, 241 Iowa 1093, 1097, 42 N.W.2d 516, 519, and citations.

Aside from the testimony of the incompetent witness Mr. Elliott there is no proof of any oral agreement between testatrix and her husband except such as may be inferred from the wills themselves and the circumstances attending their execution. We may observe that Mr. Elliott's testimony, if considered, would be of little aid to appellants.

We have held the existence of a contract to make wills may be inferred where it is shown wills containing reciprocal provisions are executed by husband and wife, each with the knowledge of the other, at substantially the same time and at

their joint request. In re Estate of Johnson, 233 Iowa 782, 787, 788, 10 N.W.2d 664, 667, 148 A. L. R. 748, 754; Johansen v. Davenport Bank & Trust Co., supra, 242 Iowa 172, 176, 46 N.W.2d 48, 51, and citations; Hale v. Iowa-Des Moines National Bank & Trust Co., 243 Iowa 303, 310, 51 N.W.2d 421, 425. According to the great weight of authority there must be other evidence of a contract between the testators. Annotation 169 A. L. R. 9, 74, 75, and decisions there cited. See also 57 Am. Jur., Wills, section 730.

However, we need not now re-examine our precedents upon this point. We may infer these two wills were made pursuant to an oral agreement between the makers. But the only agreement which may be inferred is that Mr. and Mrs. Lenders were to dispose of their property as provided in the wills. Hale v. Iowa-Des Moines National Bank & Trust Co., supra, 243 Iowa 303, 310, 51 N.W.2d 421, 425. Thus appellants are entitled to take only such portion of Mrs. Lenders' estate as her will gives them. As we have frequently expressed it, their rights are "fixed and determined according to the terms of the mutual will." In re Estate of Johnson, supra, 233 Iowa 782, 787, 10 N.W.2d 664, 667, 148 A. L. R. 748, 753, 754, and citations.

 Aside from a minor bequest, each of these wills leaves the surviving spouse the rest "of the property I may own at the time of my death * * * to be hers (or his) absolutely." If the spouse does not survive, each will leaves the rest "of the property I may own at the time of my death" to those of the named beneficiaries who do survive. No specific property is referred to. Neither will attempts to dispose of any property except such as the maker may own at the time of death.

The terms of the wills and the circumstances of their execution afford no evidence of an oral agreement which prevented Mrs. Lenders during her lifetime from making bona fide gifts of her own property to the extent of the gifts under attack. The wills negative the thought testators contracted to dispose of all the property they then owned or might later acquire or in fact any property other than each might own at death.

94 C.J.S., Wills, section 119, says: "Where the contract covers only what property the promisor may leave at his death

\* \* \*, the promisor remains free to use, control, and dispose of property in his lifetime, and transfers or conveyances by him before his death are valid unless made with intent to defraud, even though no consideration therefor is given. Such contracts do not prevent the making of gifts by the promisor in his lifetime provided the gifts are reasonable, absolute, bona fide, not testamentary in effect, and not made for the purpose of defeating the contract or having such effect."

57 Am. Jur., Wills, section 710, page 479, states: "It may be stated generally that the courts do not consider that the parties to a joint and mutual will intended to restrict either party from disposing of property in good faith by transfers effective during his or her lifetime, unless a plain intention to this effect is expressed in the will or in the contract pursuant to which it was executed. Nothing short of plain and express words to that effect in a contract to execute wills with mutual and reciprocal provisions is sufficient to prevent one of the testators from disposing of his property in good faith during his lifetime, not withstanding the death of the other testator. In general, no such restriction exists where, under the contract and will executed pursuant thereto, each testator designates the property to be devised as that belonging to him at the time of his death."

Much to the same effect is 4 Page on Wills, Lifetime Ed., section 1729.

Upon a previous appeal in this same estate, involving primarily another question, we observed "It must be first determined whether the two wills were mutual wills and whether there was a contract restricting the surviving party from disposing of her property during her lifetime. See 57 Am. Jur., Wills, section 710, page 479" (quoted above). Kanealy v. Heiserman, 244 Iowa 708, 713, 57 N.W.2d 799, 802.

Powell v. McBlain, 222 Iowa 799, 805, 806, 269 N.W. 883, 887, is like the instant case on principle. Testatrix there agreed in writing to execute a will giving her son " 'at her death all of the property then owned by her'." The will bequeathed to the son " 'all of the property which I may own at the time of my death'." We held the contract did not prevent testatrix in

her lifetime from conveying certain lots to a third person, reserving to her the income for life. "Under the wording of the contract she only agreed to will to the son all of the property owned by her at the time of her death * * *." We quoted with approval from 68 C.J., Wills, section 204, page 586, the first sentence of the quotation, supra, from 94 C.J.S., Wills, section 119 (page 806 of 222 Iowa).

Hatcher v. Sawyer, supra, 243 Iowa 858, 868, 52 N.W.2d 490, 495, says: "Where the contract covers only what property the promisor may leave at his death the promisor is not restricted in the use, control and disposition of his property during his lifetime and transfers or conveyances before his death are valid where there is no intent to defraud. 68 C.J., Wills, section 204, page 586. Gifts which are reasonable, not testamentary in effect, and which are not made to circumvent the contract or have that effect may be made. 68 C.J., Wills, section 204, page 587."

68 C.J., Wills, section 204, states the law here applicable as it is expressed in 94 C.J.S., Wills, section 119, quoted above.

Schultz v. Brewer, 244 Iowa 21, 26, 55 N.W.2d 561, 563, and Bell v. Pierschbacher, supra, 245 Iowa 436, 444, 62 N.W.2d 784, 789, state: "Even where a surviving spouse is obligated to dispose of his property at death in a certain manner courts are slow to hold he cannot dispose of his own property in good faith during his lifetime unless he has expressly agreed not to do so." The statement is quoted with approval in Estate of Awtry v. Commissioner of Internal Revenue, 8 Cir., Iowa, 221 F.2d 749. See also annotation 108 A. L. R. 867, 868, 869.

Other Iowa decisions which lend support to our conclusion here are Kisor v. Litzenberg, 203 Iowa 1183, 1193, 212 N.W. 343, and Culver v. Hess, 234 Iowa 877, 14 N.W.2d 692.

Ohms v. Church of the Nazarene, 64 Idaho 262, 266, 130 P.2d 679, 680, is persuasive authority in support of our views. The Ohms wills, very similar to the Lenders wills, were executed coincidentally with a written contract between husband and wife that all " 'property owned by the one dying last shall go to the children of Otto Ohms.' " After the husband's death the wife gave to a church 40 acres of land he had deeded to her three days before the contract and wills were made. The gift was

upheld as not in violation of the wife's contract or will. The opinion says (page 269 of 64 Idaho, page 682 of 130 P.2d): "By the terms of her contract Lou Ohms was obligated to leave to her husband's children and grandchildren, if she survived him, all the property of which she died seized. That did not include property which she had owned absolutely and which she had given away prior to her death."

The Ohms case is analyzed and quoted from with approval in Schultz v. Brewer, supra, 244 Iowa 21, 28, 55 N.W.2d 561, 564.

In Austin v. Davis, 128 Ind. 472, 476, 26 N.E. 890, 891, 892, 12 L. R. A. 120, 25 Am. St. Rep. 456, decedent bound himself to leave to his adopted daughter "whatever property he might possess at the time of his death." The court held the daughter had no claim to property decedent in his lifetime voluntarily conveyed to his wife. The opinion states, "All the authorities agree that such a contract * * * left John S. Johnson perfectly free and unrestrained in the enjoyment of his property, and that he could dispose of it as he pleased, at any time during his life, by gift or otherwise. [Citations.]"

Other decisions which support our conclusion are Rastetter v. Hoenninger, 214 N. Y. 66, 72, 108 N.E. 210, 212 (analyzed and quoted from with approval in Schultz v. Brewer, supra, 244 Iowa 21, 27, 55 N.W.2d 561, 564); Dickinson v. Lane, 193 N. Y. 18, 85 N.E. 818, 20 L. R. A., N.S., 1154; Wagar v. Marshburn, 241 Ala. 73, 1 So.2d 303.

The wills in question were prepared by able counsel of wide experience, a partner of the Lenders own attorney. Mr. and Mrs. Lenders seem to have consulted their lawyer frequently. If they intended to enter into a contract which would preclude the survivor from making a bona fide gift from his or her own property it seems strange the agreement was not reduced to writing. In any event we are clear such a contract has not been established by clear and satisfactory evidence.

Appellants rely upon Baker v. Syfritt, 147 Iowa 49, 125 N.W. 998; Campbell v. Dunkelberger, 172 Iowa 385, 153 N.W. 56; Child v. Smith, 225 Iowa 1205, 282 N.W. 316, and Jennings v. McKeen, 245 Iowa 1206, 65 N.W.2d 207. They are not in point. In none of them was there a contract to bequeath merely "the

property I may own at the time of my death." In the Baker and Campbell cases the survivor was left only a life estate with remainders to others, not, as here, property "to be hers absolutely." In these two cases the contract covered the property owned at that time, not, as here, at time of death of the survivor. In Child v. Smith and Jennings v. McKeen, the survivor made a new will which undertook to dispose of all his or her estate at time of death. If upheld, these new wills would have defeated the contract which led to the making of the prior wills. Here there were gifts of a comparatively small part of Mrs. Lenders' own property in her lifetime.

V. Error is assigned in the trial court's finding the transfers in question were not shown to be fraudulent. We are not justified in disturbing the finding.

There is no evidence of actual fraud. The most that may be claimed is constructive fraud based, in the main, on the fact the gifts totaled about $88,000 in value. Yet we understand the rest of Mrs. Lenders' estate was appraised at about $540,000. Thus she gave her sisters only about 14% of what she then had. And, as stated, presumably they would have acquired under her will in any event about 40% of what Anne gave them in her lifetime. The finding the gifts were reasonable in amount has substantial support in the evidence. They did not defeat the only contract it may be inferred Mrs. Lenders made. They merely reduced the bequests to appellants by something like 14%. Dickinson v. Lane, supra, 193 N. Y. 18, 85 N.E. 818, 820, 20 L. R. A., N.S., 1154, and Ohms v. Church of the Nazarene, supra, 64 Idaho 262, 130 P.2d 679, 681, 682, support our conclusion on this issue.

VI. There is no merit to appellants' contention, for which no authority is cited, the gifts to the sisters, except the transfer of Penick & Ford stock, were testamentary in character.

Two of the gifts were effected by the creation of joint bank accounts payable to testatrix and, respectively, Katherine and Ellen. When the joint account in the Chicago bank was established testatrix and Katherine signed a signature card there but the terms thereof are not shown. However it appears without dispute by evidence offered by appellants that when the account was opened testatrix told Katherine and an official of the bank

it was her intent and purpose the account should be Katherine's and she was to have full access to it—testatrix wanted to be sure Katherine would have title to it. A few days before testatrix died she directed Katherine to withdraw the balance of the joint account in the Chicago bank. Katherine then wrote a check therefor but did not cash it until about a month after testatrix died.

It is not shown whether the joint account in the Cedar Rapids bank was created under a written contract with the bank. It seems clear, however, testatrix intended her sister Ellen at that time to have a joint interest in and control of the deposit just as she intended Katherine to have an immediate joint interest in and control of the Chicago account.

Evidently each joint owner of each account had the right to withdraw the entire fund at any time. All parties appear to have intended the gifts to be complete when the joint accounts were created. There is substantial support for the trial court's finding "there was clearly a transfer of some quantum of present interest to the donee, so that the transfers could not be testamentary in character."

No question of the admissibility of parol evidence on the issue of ownership of a joint interest in these accounts is presented. See on this question Hill v. Havens, 242 Iowa 920, 48 N.W.2d 870, which reviews our prior decisions; Murray v. Gadsden, 91 App. D. C. 38, 197 F.2d 194, 33 A. L. R.2d 554, and annotation 569. As stated, the terms of the signature card at the Chicago bank are not shown and in any event the parol evidence was offered by appellants.

We hold a joint interest in these accounts vested in Katherine and Ellen respectively, when the joint accounts were created and the gifts were not testamentary in character. Numerous authorities in support of this view include Estate of Awtry v. Commissioner of Internal Revenue, supra, 8 Cir., Iowa, 221 F.2d 749, 753-755; Newton v. Newton, 221 Ind. 306, 47 N.E.2d 614; MacLennan v. MacLennan, 316 Mass. 593, 55 N.E.2d 928, 931; Burns v. Nolette, 83 N.H. 489, 144 A. 848, 67 A.L.R. 1051; Kelly v. Beers, 194 N.Y. 49, 86 N.E. 980, 128 Am. St. Rep. 543; Guitner v. McEowen, 99 Ohio App. 32, 124 N.E.2d 744; Beach v. Holland, 172 Ore. 396, 142 P.2d 990, 149 A.L.R. 866,

and annotation 879 and earlier annotations therein cited; 94 C.J.S., Wills, section 148; 57 Am. Jur., Wills, section 45. See also In re Estate of Winkler, 232 Iowa 930, 5 N.W.2d 153.

■■ The remaining gift was proceeds of insurance on Mr. Lenders' life, payable to testatrix, which she left with the insurance company "under a certain clause in the insurance." Testatrix did not withdraw the fund and at her death the company paid it to the sisters as contingent beneficiaries. They received this money under the contract between testatrix and the company, not by virtue of any testamentary disposition by testatrix. Mutual Benefit Life Ins. Co. v. Ellis, 2 Cir., N.Y., 125 F.2d 127, 138 A.L.R. 1478, 1482, certiorari denied, 316 U.S. 665, 62 S.Ct. 945, 86 L.Ed. 1741; 94 C.J.S., Wills, section 148.— Affirmed.

All JUSTICES concur.